## McCULLOUGH BROTHERS *et al.* *v.* SAWTELL.

1. Where two fruit dealers jointly contract with the owner of a cold-storage plant for the storage of apples, in a suit by the former against the latter, to recover damages occasioned to the apples by causing a lower temperature than that provided in the contract, the testimony of an employee of the defendant that the defendant, in the presence of one of the plaintiffs, instructed him to obey and carry out the orders of this particular plaintiff as to the regulation of the temperature, is not open to objection that this amounted to a self-serving declaration.

2. Where two persons jointly sue to recover damages for an alleged breach of a contract between them and the defendant, the admissions of one of the plaintiffs affecting the terms of the contract are admissible against all.

3. Where a witness is sought to be impeached by proof of contradictory statements alleged to have been previously made by the witness, which are relevant to his testimony and the case, it is not error to charge, in connection with the law relating to the impeachment of witnesses, the following: "If a witness swears wilfully and knowingly falsely, his testimony ought to be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. It is for the jury to determine the credit to be given his testimony when impeached by contradictory statements out of court."

4. An irrelevant instruction will not vitiate a verdict where it is reasonably clear that such instruction was not harmful to the losing party.

MAY 11, 1910.

Action for breach of contract. Before Judge Ellis. Fulton superior court. July 12, 1909.

*Westmoreland Brothers,* for plaintiffs.

*E. V. Carter,* for defendant.

EVANS, P. J.   McCullough Brothers and Hancock & Kolb sued T. R. Sawtell for damages for the breach of an alleged contract to furnish the plaintiffs with cold storage for a large quantity of apples which the plaintiffs owned in common.   According to the petition, the plaintiffs contended that the defendant agreed to keep the temperature of the cold-storage room not less than 30 nor more than 34 degrees Fahrenheit, and furnish the labor and material and all things necessary for the cold storage at his expense.   The defendant in his answer admitted that he contracted with the plaintiffs to store their apples, but denied the terms of the contract as alleged in the petition; he averred that under the agreement the defendant was to have no control over the temperature of the room, but that the plaintiffs should inspect same daily and that the defendant's servants were under the direction and control of the plaintiffs at all times for the purpose of regulating the temperature of the room.   The apples stored by the plaintiffs were frozen because of the temperature's falling below 30 degrees, and damages were claimed for the loss thus occasioned.   The evidence was voluminous on both sides, and sharply conflicting.   The trial eventuated in a verdict for the defendant, and the plaintiffs filed their motion for a new trial, complaining of the ruling of the court as to the admission of certain evidence, and of certain instructions to the jury.   The motion was denied, and the plaintiffs excepted.

1, 2.   The court allowed one employee of the defendant to testify: "I heard a conversation between Mr. Sawtell and Mr. Hancock with reference to the temperature of the room after some of the apples had been put in the storage room in the latter part of September, 1905.   Mr. Sawtell told Mr. Hancock that he would not have anything to do with it; that I would act under Mr. Hancock's directions and I would carry it as near as I could; if he said carry it down, I was to carry it down, and if he wanted it up, I was to let it go up.   That conversation occurred right in the building within fifteen or twenty feet of the storage room.   Mr. Sawtell said that to Mr. Hancock.   Mr. Hancock said then, 'That is all right, and me and Roberts [the witness] can make that all right;

33

we can get along all right.'"    Another employee was permitted
to testify: "I never received any instructions from Mr. Sawtell in
reference to those apples, only to obey and carry out Mr. Hancock's
orders about the temperature. Yes, sir, Mr. Hancock was pres-
ent when I was so instructed; yes, sir; Mr. Sawtell gave me those
instructions in the presence of Mr. Hancock, in reference to those
apples and the room in which they were stored." Another em-
ployee testified: "The only thing I know about the storing of
apples at that plant by McCullough Brothers and Hancock & Kolb
during the winter of 1905 and 1906, they had an amount of ap-
ples stored there, and Mr. Hancock, that gentleman there [indi-
cating plaintiff] gave me instructions about the temperature; he
told me a few times how he wanted the temperature carried, what
degree to carry the temperature in the room. Yes, sir; he did re-
quest me to run it to a certain degree; he told me on one occasion,
I think; he came out there on one Sunday. I was down in the
engine room working on the dynamo, and he came down there, and
he said he had been down in the room, and he told me what the
temperature was; if I am not mistaken, he said it was thirty-two
or about thirty-three, and I said something about it, that I prob-
ably thought that was about low enough for fruit; and he said, no,
it wouldn't hurt at that, but it wouldn't hurt to run it to twenty-
six or seven, but not to keep it there too long; he said for a short
period. Yes, sir, Mr. Hancock said that to me. That was some-
time along about the 15th or 18th of December, 1905. Yes, sir,
that was while the apples were stored in that plant." It is con-
tended that this evidence was inadmissible, because the statement
of the defendant in the presence of one of the plaintiffs as to the
regulation of the temperature is but a self-serving declaration made
subsequently to the contract; that the various occurrences do not
amount to admissions, and, even if they do amount to admissions,
they only bound Mr. Hancock, the plaintiff alleged to have made
the admissions; and that the court erred in not restricting the
scope of the evidence, if admissible, as affecting the party who
made them. None of these objections are meritorious. "Where
the parties to a suit, either as plaintiffs or defendants, set up in a
joint suit a joint claim, resting on one and the same contract, with
an issue applying to them jointly, the declarations or admissions

of one are evidence against his coplaintiff or codefendant." *Southern Life Ins. Co.* v. *Wilkinson*, 53 *Ga.* 545.

3. Testimony was offered that a witness had previously made contradictory statements relevant to his testimony and to the case on trial. The court instructed the jury as to the credibility and impeachment of witnesses, and, among other things, said, "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony in the case. Before contradictory statements can be proven against him, his mind shall be called with as much certainty as possible to the time, place, and circumstances attending the former statement. When a witness is successfully contradicted as to a material matter, his credit as to other matters is for the jury; but if a witness swear wilfully and knowingly falsely, his testimony should be disregarded entirely unless corroborated by circumstances or other unimpeached evidence. It is for the jury to determine the credit to be given his testimony when impeached by contradictory statements out of court." The criticism upon this charge is that there was no evidence that any witness had sworn wilfully and knowingly falsely. The code provides how a witness may be impeached, and one of the modes of impeachment is by proof of contradictory statements previously made by the witness as to matters relevant to his testimony and to the case. The code further provides that "When a witness is successfully contradicted as to a material matter, his credit as to other matters is for the jury. But if a witness swear wilfully and knowingly falsely, his testimony ought to be disregarded entirely unless corroborated by circumstances, or other unimpeached evidence. It is for the jury to determine the credit to be given his testimony when impeached for general bad character or for contradictory statements out of court." Civil Code, § 5295. This section of the code underwent analysis in *Powell* v. *State*, 101 *Ga.* 19 (29 S. E. 309, 65 Am. St. R. 277), and it is unnecessary to reproduce or paraphrase that analysis. The effect of the charge was an instruction that if the witness had been successfully impeached, his testimony should be disregarded by the jury. Successful impeachment of a witness may afford an inference that the impeached witness may have knowingly delivered false testimony; and according to the reasoning in the *Powell* case, the charge complained of was not erroneous for the reason assigned.

4. The court charged: "If the defendant contracted to furnish space and cold storage for the apples of the plaintiffs, and under that contract made no restriction of his liability, then he was bound to exercise all ordinary care in furnishing a reasonably good storage room, and furnishing the proper refrigeration." The assignment of error is that the suit is upon a contract, and that the charge is irrelevant to any issue made by the pleadings. We agree that the charge complained of was irrelevant. Both parties insisted that there was a parol contract, but they differed as to the essential terms of the contract. The defendant's liability depended upon the plaintiffs' establishing by evidence the contract alleged in their pleadings: he was sued upon an express contract, and was not sought to be held bound either upon an implied contract or in tort. However, from a careful reading of the voluminous evidence, the jury could not have been misled by this inapplicable instruction. The evidence submitted by the plaintiffs tended to show the existence of the contract pleaded in their petition, while that of the defendant tended to establish the contract averred in his plea. The issues were so sharply drawn that it is clear that the jury were not misled by the instruction complained of.

*Judgment affirmed. All the Justices concur.*