## 50155. MOTE v. MOTE et al.

WEBB, Judge.

Bobby Ray Poole, Charlie Mote, Jr., and Charlie's brother Leonard Mote all were killed during the early morning hours of Sunday, April 4, 1971, when a 1968 Dodge "Super Bee" in which they were riding at approximately 90 miles per hour went off the left side of U. S. Highway 29 in a curve south of Auburn, struck a pine tree, went over an embankment and turned end-over-end an unknown number of times before landing upside down in the Apalachee River. There were no eyewitnesses to this occurrence, and the automobile was not discovered until approximately fifteen hours later at which time it was pulled from the river on its top, turned over, and dragged to the edge of the highway, whereupon the bodies of the three men were removed.

As a result of this occurrence Leonard's widow, Mrs. Betty Jo Mote, brought suit for Leonard's wrongful death against Mrs. Annette Mote, Charlie's administratrix, contending that Leonard was a guest passenger in the automobile owned and being operated by Charlie. The principal questions in the case were whether Charlie or Poole owned the automobile and whether Charlie or Poole was operating it at the time. The jury returned a verdict in plaintiff's favor against Charlie's administratrix, and she now appeals. *Held:*

1. Defendant's primary contention is that the evidence was insufficient for jury determination as to the identity of the driver of the death vehicle, and that accordingly her motions for directed verdict, for judgment notwithstanding the verdict, and for new trial should have been granted. The principle relied upon is that "where circumstantial evidence is relied upon to establish a conclusion and the uncontradicted circumstantial evidence gives equal support to inconsistent conclusions or theories, the judgment as a matter of law must go against the party having the burden of proof." *Liberty Nat. Life Ins. Co. v. Liner,* 113 Ga. App. 710, 712 (149 SE2d 523) and authorities cited.

Thus it is argued that even though there was evidence which, if believed by the jury, showed that

Charlie's body was found in the front seat on the driver's side in the general vicinity of the steering wheel and the other two bodies were in the back, this evidence was insufficient upon which to base a conclusion that Charlie was driving at the time of the occurrence since Poole had taken custody and possession of the automobile some two to three weeks prior to this event and was driving it earlier in the evening, pointing to the more probable conclusion that Poole was still driving at the time of the fatalities and, because no one was wearing seat belts, the bodies had been moved about in the automobile by the force of the collision or by phenomena occurring while the car was submerged upside down in the flowing river with the windows down or broken out.

We hold that the issue as to the identity of the driver was one for jury determination. "If the evidence for the plaintiff, circumstantial though it be, tends reasonably to establish the theory of the case made by the petition, and preponderates to that theory rather than to any other reasonable hypothesis, it is error to grant a nonsuit." *Callaway v. Hall,* 58 Ga. App. 795 (199 SE 899). "Where all the occupants of a motor vehicle are killed as the result of a collision, and there are no eyewitnesses as to which occupant was driving, the jury may determine from evidence as to the physical surroundings, the location of the bodies, etc., which occupant was the driver." *Pettigrew v. Branch,* 101 Ga. App. 534 (1) (114 SE2d 391). Accord, *Kimberly v. Reed,* 79 Ga. App. 137 (3, 5) (53 SE2d 208); *Martin v. State,* 102 Ga. App. 216, 219 (4) (115 SE2d 859). See also *Jones v. Britt,* 75 Ga. App. 142 (42 SE2d 648). The instant case cannot be satisfactorily distinguished from *Pettigrew,* and we see no reason to depart from the ruling made there and in the other cases cited supra.

Enumeration of error 1, and the general grounds of the motion for new trial as complained of in enumeration no. 17, are without merit.

2. Remaining enumerations of error complain of the court's charge as given and failure to charge as timely requested by defendant. We find reversible error in several of these enumerations; and because certain of the charges and failure to charge are so interrelated to each other and to the circumstances of the parties, particularly

with reference to the ownership of the Dodge "Super Bee," we find it necessary to first state those circumstances and then to attempt to correlate the attacks on the charge with each other and with the circumstances.

As indicated above, one possible theory of recovery was that Charlie Mote was driving the "Super Bee" at the time of the occurrence and was directly responsible for his negligent operation of it, regardless of who may have owned it. Another theory was that even if Poole was driving at the time, Charlie was responsible for Poole's negligence on the basis that Charlie owned the automobile, was present at the time, and was presumptively in control of it under the "owner present" doctrine. Although as held in Division 1 the jury would have been authorized to find for the plaintiff on the basis that Charlie was actually driving, it is impossible to determine whether the jury reached a verdict on that basis or on the "owner present" theory. Consequently error in the charge with respect to the latter theory could not be held harmless, and we now consider those questions.

The record reveals that Charlie Mote had owned the "Super Bee" and Poole had owned a Chrysler. Approximately two to three weeks prior to the collision, Poole and Charlie agreed to trade cars, the two men shaking hands and saying that it was a deal, followed by Poole taking possession of the "Super Bee" and Charlie taking possession of the Chrysler. The tag receipts and certificates of title were never transferred, however, both men being killed before that was accomplished. Between the time of the trade and the time of the collision, Poole kept the "Super Bee" at his apartment, and Charlie and his wife retained continuous possession of the Chrysler. During this period, only Poole and his son, with Poole always present, drove the "Super Bee," and only Charlie and his wife drove the Chrysler. Charlie purchased two new tires for the Chrysler, and Poole attempted to borrow money from his girl friend to purchase a tag for the "Super Bee."

At approximately 5 p.m. on Saturday, April 3, Poole and the Mote brothers arrived at Leonard's home and remained there for approximately 45 minutes, during

which time the three men drank some bourbon whiskey. Poole and Charlie returned to their respective residences, and at approximately 6:30 p.m. Leonard called Charlie requesting that Charlie pick him up to discuss business. Charlie then called Poole and requested that Poole go with him to Leonard's house, and Poole left his apartment approximately 9 p.m. driving the "Super Bee" to pick up Charlie. Poole remained at Charlie's home for about five or ten minutes, during which time they each had a drink of whiskey. Charlie and Poole then left in the "Super Bee" to go to Leonard's home in Winder. Neither Charlie's wife nor daughter saw who drove the automobile away, but Poole left the house with the keys to the "Super Bee" in his hand. The two arrived at Leonard's home at around 11 p.m., the three men left in the "Super Bee" some time around midnight to go back to Charlie's house in Tucker and the fatal collision then occurred on this trip at approximately 12:30 - 1 a.m. When the car was discovered in the river at approximately 4 p.m. in the afternoon, a 1/2 gallon bottle of liquor, from which there was 1/2 to 3/4 of a pint missing, was found floating out of the back seat. Blood samples were taken from the bodies of Poole and Charlie, and the test results showed that Charlie had .11% blood alcohol content some 15 hours after the collision, and Poole had a blood alcohol content of .23%.

(a) In enumerations of error 2 and 3, defendant complains of the court's failure to give her requests to charge numbers 2 and 4, setting forth principles by which the jury were to determine ownership of the death car. However, the principles contended for are also set forth in defendant's requests numbers 3 and 5, which the trial court did charge, and since the matter was thus adequately covered no reversible error appears. *Hardwick v. Price,* 114 Ga. App. 817 (3) (152 SE2d 905); *Jackson v. Miles,* 126 Ga. App. 320, 321 (2) (190 SE2d 565).

(b) Defendant's request number 5, which as stated above the court charged, is as follows: "I charge you that transactions between the parties themselves, that is, the transferors and transferees, are excepted from the provisions of the Georgia Motor Vehicle Certificate of

Title Act and, as between the parties to the transactions, there can be a legal and binding transfer of title to an automobile even though there has been no transfer of the certificate of title and even though the certificate of title is not registered with the State in the name of the transferee."

This charge was adjusted to the evidence and abstractly correct. Code Ann. § 68-415a (d); *Allen v. Holloway,* 119 Ga. App. 676 (168 SE2d 196); *Canal Ins. Co. v. Woodard,* 121 Ga. App. 356, 358 (1) (173 SE2d 727); *Georgia Mut. Ins. Co. v. Criterion Ins. Co.,* 131 Ga. App. 339 (1b) (206 SE2d 88). However, after having given this correct charge, the court later charged Code Ann. § 68-415a (a) verbatim in accordance with plaintiff's request to charge number 6. Defendant objected and complains of this charge in enumeration of error 15.

The charge constituted reversible error. Code Ann. § 68-415a (a) provides that when an owner transfers his interest in a vehicle, he must execute an assignment and warranty of title and cause the certificate of title and assignment to be delivered to the transferee of the vehicle. Since under the previous correct charge of the court the transfer of vehicles as between Charlie and Poole would be effective notwithstanding the fact that no transfer of the certificate of title was made, § 68-415a (a) was inapplicable and conflicted with the previous charge of the court. The effect of charging defendant's request 5 and also plaintiff's request 6 left the jury in a quandary as to whether or not the certificate of title to the "Super Bee" was required to be transferred from Charlie to Poole, and they were thus in no position to determine who the owner of the car was for purposes of the "owner present" doctrine.

" '[A] charge containing two distinct propositions conflicting the one with the other is calculated to leave the jury in such a confused condition of mind that they can not render an intelligible verdict, and requires the grant of a new trial.' *Plaspohl v. Atlantic C. L. R. Co.,* 87 Ga. App. 506, 508 (74 SE2d 491)." *State Hwy. Dept. v. Stewart,* 104 Ga. App. 178, 183 (121 SE2d 278). Accord, *Baxter v. State Hwy. Dept.,* 108 Ga. App. 324 (132 SE2d 863).

(c) Being thus in a state of confusion as to how to determine the death car's owner, the jury was confronted

with the court's giving of the "owner present" charge as requested in plaintiff's request 8: "I charge you that where an owner is present in an automobile being driven by another an inference may be properly drawn by the jury that the owner was in control of the operation of the automobile and that the negligence of the driver of the automobile is imputable to the owner riding therein as a passenger." Defendant objected, error is enumerated thereon in Enumeration 16, and the enumeration is meritorious. The charge was erroneous because it neglected the principle that the inference applies only where nothing else appears, and only in the absence of any evidence to the contrary that the owner had the power and capacity to control the vehicle, a subject thoroughly explored in *Blount v. Sutton,* 114 Ga. App. 767 (152 SE2d 777), *Floyd v. Colonial Stores,* 121 Ga. App. 852 (176 SE2d 111), and *Central of Georgia R. Co. v. Luther,* 128 Ga. App. 178 (196 SE2d 149).

The evidence here showed that Charlie had a blood alcohol content of .11% fifteen hours after the collision, and that at that degree of intoxication he would have been experiencing loss of attention and inability to concentrate. Assuming that Charlie was the owner, the jury should have been allowed to consider whether he had the capacity to control the automobile and should not have been charged that the "owner present" inference applied ipso facto. "Under the evidence in the transcript concerning the condition of the owner and his incapacity the inference was rebutted." *Central of Georgia R. Co. v. Luther,* 128 Ga. App. 178, 182, supra.

(d) There was testimony by witness Price, who discovered the automobile in the river and helped a wrecker driver remove the bodies, tending to show in conjunction with other evidence that because of body weight, clothing, facial lacerations, etc. the body in the front seat was not Charlie's body. The identity of this body as being that of Charlie rested exclusively upon the testimony of Officer Collier, who arrived at the scene approximately 20 minutes after others were already there. Officer Collier did not assist in removing the bodies, and he took the identification from the body after it had been removed from the automobile and placed upon a

stretcher. He testified that this body, which he identified as being Charlie's, had been partially in the front seat and partially back over the rear of the front seat in the general vicinity of the steering wheel. However, on cross examination it was brought out that Officer Collier had previously testified on deposition that he did not see Charlie in the front seat of the car and could not say for certain which body was where, "I can't really say for sure, I mean which one it was because that was told by the Gwinnett County Police when they took them out, they identified them."

Because of these prior contradictory statements, defendant requested the trial court to charge as follows: "When a witness shall be successfully contradicted as to a material matter, his or her credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his or her testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The credit to be given his or her testimony where impeached for contradictory statements out of court shall be for the jury to determine." The trial court refused to so charge, and error is enumerated thereon in Enumeration 13.

The requested charge is in the language of Code § 38-1806, except that it omits reference to impeachment for general bad character (see *Shannon v. Kaylor,* 133 Ga. App. 514 (211 SE2d 368)); and in *McCullough Brothers v. Sawtell,* 134 Ga. 512, 515 (3) (68 SE 89) and *Savannah Ice Delivery Co. v. Ayers,* 127 Ga. App. 560, 561 (3) (194 SE2d 330), it was held that the trial court properly charged this section where the witness had made prior contradictory statements. It must follow that, since defendant timely requested the charge, it was error to fail to give it, particularly since the requested charge was not otherwise adequately covered. It was explicitly so held in *Pelham & H. R. Co. v. Elliott,* 11 Ga. App. 621, 622 (1) (75 SE 1062),[1]

---

[1]Distinguished as to the "general bad character" portion of the charge in *Shannon v. Kaylor,* 133 Ga. App. 514 (211 SE2d 368). The instant request to charge does not carry that infirmity as it did in *Shannon.*

and enumeration of error 13 is meritorious.

(e) The above errors culminate in the trial court's refusal to charge defendant's request to charge number 7: "If you should determine that the actions of Bobby Ray Poole, who is not a party to this lawsuit, were the sole proximate cause of the injury sustained by the plaintiff, then the plaintiff cannot recover from the defendant in this case, and in such event you would be obligated to return a verdict in favor of the defendant." Defendant had set forth in her answer the defense that Poole's negligence was the sole proximate cause of this occurrence, and as seen above, the jury, had it been properly instructed, might have concluded that Poole owned the "Super Bee" and that even if Charlie owned it, the "owner inference" doctrine would not apply under the circumstances. This would leave the question of whether Charlie was driving at the time. Again, had the jury been properly instructed as to the effect of Officer Collier's prior contradictory statements, they might have chosen to believe, in accordance with the testimony of witness Price and contrary to the testimony of Officer Collier, that Charlie's body was not the one in closest proximity to the steering wheel; and, since only Poole and his son, with Poole present, had been driving the automobile since the trade, and Poole was the last-known person to be driving on the night in question, they might have chosen to believe that Poole was driving at the time of the occurrence.

It was therefore reversible error to fail to charge as requested on the subject of Poole's actions as being the sole proximate cause of the fatalities; and enumeration of error 4 is meritorious and requires reversal.

3. Of the remaining complaints on failure to charge as requested, it is our view that the principles were otherwise adequately covered elsewhere in the charge or have been sufficiently dealt with in this opinion to give adequate direction on retrial.

*Judgment reversed. Bell, C. J., and Marshall, J., concur.*

ARGUED FEBRUARY 3, 1975 — DECIDED APRIL 8, 1975 — REHEARING DENIED APRIL 29, 1975 —

*Powell, Goldstein, Frazer & Murphy, Eugene G. Partain, Daniel M. Coursey, Jr.,* for appellant.

*James W. Paris, Cullen M. Ward, Jackson C. Floyd, Jr., Paul S. Weiner,* for appellees.