**WALDOR PUMP & EQUIPMENT CO., Respondent,**

v.

**ORR–SCHELEN–MAYERON & ASSOCIATES, INC., Appellant.**

**No. C9–85–1313.**

Court of Appeals of Minnesota.

May 6, 1986.

Gerald L. Svoboda, Fabyanske, Svoboda & Westra, St. Paul, for respondent.

Steven D. Jamar, Thomas L. Adams, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Orr-Schelen-Mayeron & Associates, Inc. (OSM), an engineering firm, prepared specifications for a municipal public works project. Waldor Pump & Equipment Co., subcontractor and supplier to Paul A. Laurence Co. (PALCO), the general contractor, alleged OSM was negligent after Waldor Pump's equipment was rejected as not conforming to specifications. The jury found OSM negligent in drafting and interpreting specifications. OSM argues that the trial court erred in submitting the issue of negligence to the jury because OSM owed no duty of reasonable care to Waldor Pump. We affirm.

## FACTS

Respondent Waldor Pump sells industrial and wastewater pumps. Appellant OSM is an engineering firm that was hired by the City of Monticello to prepare plans and specifications and to supervise a project updating the city's wastewater treatment plant.

The city awarded the general contract for the project to PALCO. PALCO chose Waldor Pump's subcontracting bid to supply eight "Wilden" sludge pumps. According to the contract between Waldor and PALCO, if the city's engineer subsequently rejected the Wilden pumps, Waldor would provide conforming pumps at no additional cost to PALCO. PALCO submitted its proposed equipment list to OSM, and after a

series of discussions, OSM rejected the Wilden pump, stating that it did not conform to specifications.[1] As required by its contract with PALCO, Waldor Pump supplied the more expensive "Dorr-Oliver" pump, which was accepted by OSM.

Waldor Pump sued OSM, alleging negligence in drafting and interpreting specifications. Waldor Pump also claimed that OSM conspired with the manufacturer's representative for Dorr-Oliver, violated Minnesota law making it illegal for a public body to prepare specifications that exclude all but one type of product, and intentionally interfered with its contractual relation to PALCO.

The jury, by special verdict, found that OSM's negligence caused Waldor Pump $61,834 in damages. The jury also found that OSM had violated Minnesota public bidding law, but that the violation was not a direct cause of Waldor's damages. OSM prevailed on the remaining charges. OSM's motion for a new trial was denied, and OSM appeals from the judgment and order.

## ISSUES

1. Is an engineer liable in negligence to a subcontractor who relied on the engineer's professional services?

2. Was testimony about witnesses' understanding of Environmental Protection Agency regulations properly admitted?

## ANALYSIS

### I

■ OSM contends it is not liable in negligence to Waldor Pump because an engineer owes no duty to anyone absent a contract. This position is contrary to the prevailing rule in a majority of jurisdictions, which recognizes the liability of those rendering "professional" services in

---

1. The project's specifications require that the pump be "self-priming" and use a "coil spring." The Wilden pump did not have a coil spring, but it was self-priming. Waldor Pump claims the only functional purpose of a coil spring is to render ·the pump self-priming. OSM contends

that a coil spring also "scours" or dislodges sludge from clogged pipelines. Waldor Pump's expert witness, Garr Jones, testified at trial that the Wilden pump conformed in all material aspects to the specifications and that there was no reason to reject it.

situations in which the professional is negligent in the provision of services. *See City of Mounds View v. Walijarvi,* 263 N.W.2d 420, 423 (Minn.1978). In that case the supreme court explained the reasoning underlying this rule:

> Architects, doctors, *engineers,* attorneys, and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement. The indeterminate nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance. Thus, doctors cannot promise that every operation will be successful; a lawyer can never be certain that a contract he drafts is without latent ambiguity; and an architect cannot be certain that a structural design will interact with natural forces as anticipated. Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals.

263 N.W.2d at 424 (emphasis added). The reasonable skill and judgment expected of professionals must be rendered to those who foreseeably rely upon the services. *Cf. Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985). Therefore, OSM is liable in negligence to those who foreseeably relied on its professional services.

Next, we must decide whether a subcontractor who sustains economic loss due to negligent performance of a consulting engineer may foreseeably rely on the engineer's services. Courts in other jurisdictions have recognized a tort duty between design professionals and contractors when the harm to the particular plaintiff was foreseeable. *See Donnelly Construction*

Co. v. Oberg/Hunt/Gilleland, 139 Ariz. 184, 677 P.2d 1292 (1984); *Conforti & Eisele v. John Morris Associates,* 175 N.J.Super. 341, 418 A.2d 1290 (1980); *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 214 N.W.2d 764 (1974). We find it foreseeable that Waldor Pump and other subcontractors, who were bound to follow the specifications prepared by OSM, could be harmed by OSM's negligent drafting or interpretation of the specifications. Therefore, OSM owed a duty to Waldor Pump to reasonably draft and interpret the project's specifications.[2]

Our holding in *D & A Development Co. v. Butler,* 357 N.W.2d 156 (Minn.Ct.App. 1984), is not dispositive in this case. In *D & A* a warehouse developer asserted that an architect was liable in negligence to the developer because the architect breached a contract with the *builder* to provide plans within a certain time frame. The developer did not have a contract with the architect, nor did the developer allege a third-party beneficiary claim. We held that because the complaint alleged only the breach of a contractual duty to complete plans by the specified date, it failed to state a cause of action in negligence. Here, OSM performed its contract with the city, but breached a well-established tort duty owed to the plaintiff to draft specifications in a professional manner.

Finally, OSM argues that *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn.1981), prevents Waldor Pump from recovering economic losses under a negligence theory. Economic losses are those resulting from the failure of a product to perform to the level expected by the buyer. *Minneapolis Society of Fine Arts v. Parker-Klein Associates Architects, Inc.,* 354 N.W.2d 816, 820–21 (Minn.1984). Waldor Pump's damages resulted not from failure of a product but from negligent provision of engineering services. *See also*

---

**2.** Waldor Pump argues that OSM waived its right to raise this issue on appeal by submitting proposed jury instructions to the trial court. OSM contends that after the trial court decided that the negligence issue would go to the jury,

OSM was entitled to propose jury instructions. We agree. OSM preserved this issue by objecting to the instructions and by moving for a directed verdict and a judgment notwithstanding the verdict.

*Valley Farmers' Elevator v. Lindsay Brothers Co.*, 380 N.W.2d 874 (Minn.Ct. App.1986), *pet. for review granted* (Minn. April 11, 1986) (*Superwood* does not apply to commercial transactions involving the rendition of professional services if the transaction was not governed by the U.C. C.). We do not read *Superwood* to limit the legal remedies of individuals economically injured by the negligent rendition of professional services.[3]

## II

OSM argues that the trial court abused its discretion in admitting allegedly irrelevant testimony relating to witnesses' understanding of Environmental Protection Agency procurement regulations. It is not disputed that EPA procurement regulations do not establish a standard of care and that their violation does not create a private cause of action. Waldor asserts that the testimony elicited regarding EPA regulations was relevant because it impeached the credibility of OSM officials.

Objections were made to portions of this testimony. However, no objections were made when witnesses were asked about their familiarity with, and general understanding of, EPA regulations. In fact, on *direct* examination, Gerald Corrick, OSM's project manager, was asked to explain his understanding of certain EPA procurement regulations. The trial court did not abuse its discretion in allowing witnesses to testify about EPA regulations. Any prejudicial effect was remedied by the trial court's instruction that that testimony had no bearing on OSM's alleged negligence.

## DECISION

The trial court did not err in submitting the issue of OSM's negligence to the jury or in allowing limited testimony about EPA regulations.

Affirmed.

3. The reference to *Superwood* in *D & A Development Co. v. Butler*, 357 N.W.2d at 158–59, was in dicta comparing contract and tort damages generally and was not essential to the court's holding that the complaint failed to state a cause of action in tort.