1997 SD 8

FISHER SAND & GRAVEL CO., with its principal place of business at Dickinson, North Dakota, Plaintiff and Appellee,

v.

The STATE of South Dakota By and Through the SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION, a state agency located in Pierre, South Dakota, Defendant and Appellant.

No. 19247.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1996.

Reassigned Sept. 4, 1996.

Decided Feb. 12, 1997.

Rehearing Denied March 10, 1997.

Ronald G. Schmidt of Schmidt, Schroyer, Moreno, & DuPris, Pierre, for plaintiff and appellee.

Ronald W. Banks and Barton R. Banks of Banks, Johnson, Colbath, & Kerr, Rapid City, for defendant and appellant.

GILBERTSON, Justice (on reassignment).

[¶ 1.] The State of South Dakota through the Department of Transportation appeals a jury verdict in favor of Fisher Sand & Gravel Co. for negligence resulting from a highway construction contract. We reverse and remand with instruction.

## FACTS & PROCEDURE

[¶ 2.] The State of South Dakota Department of Transportation (DOT) accepted bids for a concrete paving project to begin in June 1992 on twenty miles of U.S. Highway 12 between McIntosh and McLaughlin in Corson County, South Dakota. Bids were due June 25, 1991. Fisher Sand & Gravel Co. (Fisher), an aggregate supplier with offices in Mitchell and Spearfish, received notice of the project and ordered the proposal, planning to quote the sand and fine aggregate gravel products needed to mix the paving concrete. Prior to submitting its bid, Fisher received "Addendum No. 1," dated June 17, which stated:

> All fine aggregate [sand] must have been tested by ASTM P 214[1] for Alkali–Silica

concrete for undergoing alkali-silica reaction and resulting potentially deleterious internal expansion." *Proposal P 214: Proposed Test Method for Accelerated Detection of Potentially Deleterious Expansion of Mortar Bars Due to Alkali–Silica Reaction,* American Society for Testing and Materials.

1. The American Society for Testing and Materials (ASTM) is a "nationally recognized industry laboratory and an association that develops and implements standards for the industry," according to Harry Swank, Fisher's chief estimator and contract administrator. P 214 is a proposed test formulated by ASTM which "provides a means of detecting the potential of an aggregate used in

Reactivity and shall have obtained a value of 0.225% expansion or less. SDDOT has tested all major commercial sources in SD and has the results on record. To obtain a copy of the results please contact the Division of Engineering, Project Development Engineer.

All sources not previously tested by SDDOT must be tested by SDDOT prior to performance of design mix work. The preparation of the sample and actual testing procedure ASTM P214 requires approximately 21 days to obtain results....

[¶ 3.] The State was in the process of examining the cracking and deterioration of its paving projects and wished to avoid similar problems on this project. Fisher received this addendum on June 20, 1991, before DOT's bid deadline. The following day, Fisher acquired the list of test results from the testing of twenty-one pits referenced in the addendum.

[¶ 4.] Fisher planned to use sand from its pit located at Fort Yates, North Dakota, which had not yet been tested by DOT. Harry Swank, chief estimator for Fisher, and Gene Fisher, its president, were not concerned about Fisher's ability to provide sand which met the specifications because, in their experience, there had never been a problem they could not remedy by blending sands or mixing additional material with the sand. Fisher, as subcontractor, submitted its proposal utilizing Fort Yates sand to Sundt Corporation. Sundt incorporated Fisher's proposal into its own bid and was awarded the paving contract for the project on July 5, 1991.

[¶ 5.] Independent testing by Twin Cities Testing in January 1992 and testing by the DOT in July 1991 of samples of the Fort Yates sand yielded the same results: the Fort Yates sand did not meet DOT's specifications unless fly ash was incorporated into the aggregate mixture. DOT advised Sundt this sand could not be used for the project because it did not meet specifications, which, according to DOT, required that the sand itself, without addition of fly ash, test for alkali-silica reactivity at .225 percent or less expansion. Following meetings with DOT and Sundt, and following failed attempts at a compromise using the Fort Yates sand, Fisher obtained an alternate source of sand from the Northern Con–Ag Rauville pit located near Watertown, South Dakota. This source was on DOT's list of tested sources provided to Fisher at the time of bidding and was obtained by Fisher at a total additional cost of $420,330.49, including transportation and testing.

[¶ 6.] On June 14, 1993, Fisher sued DOT alleging negligence, violation of reasonable construction standards, breach of contract and breach of good faith and fair dealing. Fisher claimed damages of $610,008.99, which included the additional cost of the sand, as well as "mark up" of $74,398.50 (17.7%) and "lost sales revenue" of by-products from the Fort Yates pit.

[¶ 7.] The jury returned a verdict for Fisher in the amount of $406,012.74 for negligence, but explicitly found no breach of contract by DOT. At a separate hearing, the trial court granted Fisher's motion for prejudgment interest. DOT appeals, raising the following issues:

1. Whether the jury should have been instructed on Fisher's negligence claims and whether the jury's verdict on negligence is supported by the evidence?

2. Whether Fisher's expert properly testified, over objection, about his opinion of what the defendant thought or intended with reference to Addendum # 1 and/or the use or incorporation of fly ash under the Addendum?

3. Whether DOT's proposed jury instructions Nos. 1, 2, and 3 were warranted under the facts and circumstances of this case?

4. Whether Fisher was entitled to prejudgment interest on the jury's award of damages on the negligence count?

## ANALYSIS AND DECISION

### Whether the jury should have been instructed on Fisher's negligence claims and whether the jury's verdict on negligence is supported by the evidence?

[¶ 8.] Fisher was a subcontractor who entered into a subcontract approved by DOT to provide the general contractor, Sundt, with aggregate. Fisher knew of DOT's specifica-

tions for aggregate prior to entering its bid and had acquired a list of test results of suppliers that met DOT's specifications. Notwithstanding this information, Fisher continued with its plan to use its own aggregate from Fort Yates, North Dakota which had not been tested nor approved by DOT.[2] Prior to entering its bid, Fisher made no attempt to see if its North Dakota aggregate would meet DOT's specifications.

[¶ 9.] SDCL 31–2–34 is the jurisdictional statute which allows Fisher to sue DOT. That statute provides in part that Fisher may sue DOT "respecting any claim, right, or controversy arising out of the work performed, *or by virtue of the provisions of any construction contract* entered into by the South Dakota department of transportation." (emphasis added). Under this statute, if there is no contract or quasi-contract, there is no lawsuit.

[¶ 10.] In *Sweetman Const. Co. v. State*, 293 N.W.2d 457 (S.D.1980), we interpreted SDCL 31–2–34 to place a subcontractor in privity of contract with the State where the subcontract between the subcontractor and the general contractor had been approved by DOT.[3] In *Candee Const. Co. v. Dep't of Transportation*, 447 N.W.2d 339, 344 (S.D.1989), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1785, 108 L.Ed.2d 786 (1990), we held this interpretation of the statute did not limit the plaintiff to contract causes of actions, but also authorized recovery under a quantum meruit theory for extra work done and extra materials provided. However, to bring the suit under the statute one had to be a "contractor" with the State pursuant to a contract or subcontract. That is exactly what happened in the case now before us.

[¶ 11.] The jury explicitly found that DOT had not breached its subcontract with Fisher and awarded Fisher no damages on its contract. Fisher did not appeal this determination. Yet despite the fact the jury found DOT had fully complied with its contractual obligations to Fisher, we are now asked to determine whether DOT should pay Fisher

$406,012.74 in damages for negligence concerning DOT's interpretation of and conduct under the contract DOT did not breach.

[¶ 12.] In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury. *Lien v. McGladrey & Pullen*, 509 N.W.2d 421, 423 (S.D.1993). Whether a duty exists is a question of law, fully reviewable by this Court on appeal. *Tipton v. Town of Tabor*, 538 N.W.2d 783, 785 (S.D.1995). We therefore consider the existence of a duty under the de novo standard. *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D.1993) ("[W]e must determine if a relationship exists between the parties such that the law will impose upon the defendant a legal obligation or reasonable conduct for the benefit of the plaintiff.").

[¶ 13.] What duty did DOT owe Fisher? Outside of the contract there was no relationship between them. Thus, the facts here can be distinguished from those presented in *Mid–Western Elec. Inc. v. DeWild Grant Reckert & Assoc.*, 500 N.W.2d 250, 253 (S.D.1993) and *Limpert v. Bail*, 447 N.W.2d 48, 51 (S.D.1989), where no privity of contract existed between the parties. There, to find a duty, the Court relied on a foreseeable third party and the obligations arising from the undertaking of professional services. The policy concerns expressed by the Court in the above cases, i.e., protection of innocent third parties who relied on the actions of others, do not present themselves in the instant case. DOT was not "rendering services to another" as was found necessary under the theory of professional negligence addressed by the *Mid–Western* and *Limpert* Courts.

[¶ 14.] Prosser and Keeton on Torts (5th ed 1984) introduces the relationship between tort actions and contract actions as follows:

> Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to

---

**2.** Gene Fisher testified that he "just told Harry [Swank] that no if's, and's or but's about it we were going to get the sand from Fort Yates."

**3.** Both the construction contract at part VII.4., and the South Dakota DOT's Standard Specifica-

tions for Road and Bridges (1990 ed) at § 8.1, incorporated by reference into the contract, require the State's written consent to the subcontract between the prime contractor and Fisher, as subcontractor.

others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction. Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed.

*Id.* at § 92, at 656.

[¶ 15.] We have followed the same distinction.

It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty. But such legal duty may spring from extraneous circumstances, not constituting elements of the contract as such, although connected with and dependent upon it, and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud.

*Smith v. Weber,* 70 S.D. 232, 236, 16 N.W.2d 537, 539 (1944). Citing *Smith,* we held in *Weeg v. Iowa Mutual Ins. Co.,* 82 S.D. 104, 110, 141 N.W.2d 913, 916 (1966), that negligence that consists merely in the breach of a contract will not afford grounds for a tort action by third parties and is limited under a breach of contract cause of action to the party to the contract or for whose benefit the contract was made. *See also Kunkel v. United Security Ins. Co.,* 84 S.D. 116, 135, 168 N.W.2d 723, 733 (1969).

The independent tort must be separate and distinct from the breach of contract. While the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if such action is intentional.

*Hoffman v. Louis Dreyfus Corp.,* 435 N.W.2d 211, 214 (S.D.1989) (citing 22 AmJur2d *Damages* § 752 (1988)).

[¶ 16.] Herein the duty DOT owed Fisher can arise solely from the contract. Fisher never hired DOT to interpret the contract and DOT never volunteered to do the same. In *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 843 (S.D.1990), we held that

when a contracting party does not act in good faith under the contract, the other party has a remedy under the contract for breach thereof but no independent tort cause of action exists for the same claim. This is also consistent with the explicit terms of SDCL 31–2–34, dealing solely with litigation over contracts. "Where a defendant is charged with negligence because of his failure to perform an act allegedly required by contract, the question of whether the defendant had a duty to perform the act usually must be determined from the terms of the contract. The defendant's duty will not be extended beyond the duties described in the contract." *Holubek v. City of Chicago,* 146 Ill.App.3d 815, 100 Ill.Dec. 370, 372, 497 N.E.2d 348, 350 (1986).

[¶ 17.] In alleging negligence by DOT, Fisher claims it had the right to use fly ash to comply with the addendum, that it had the right to use a blend of sands, and that DOT was negligent in denying Fisher its right to use the Fort Yates sand source. Fisher further claims DOT was negligent in failing to follow industry standards regarding Fisher's alleged rights, that DOT was negligent in drafting and interpreting the parties' contract, and that DOT acted arbitrarily in denying Fisher's proffered material. In setting forth these allegations regarding its rights and DOT's obligations, Fisher fails to recognize that the contract between these parties created their rights and obligations. These duties are implied by the parties' own promises, and not imposed by law. *See Trippet Trust v. Blevins,* 1996 SD 29, ¶ 8, 545 N.W.2d 216, 222; SDCL 53–1–1. *See also S & S Trucking v. Whitewood Motors, Inc.,* 346 N.W.2d 297, 299 (S.D.1984) (testimony to show industry custom and usage is inadmissible when it conflicts with the express terms of a contract); *Thibeault v. Pickering,* 2 Mass.App.Ct. 421, 313 N.E.2d 586, 588 (1974) (holding impermissible the assumption that a custom of the trade imposed a duty on the defendant which had not been imposed by the parties' written agreement).

[¶ 18.] The jury found DOT had not breached its written contract with Fisher. In order to maintain its tort claim against DOT, Fisher must show DOT's acts or omis-

sions resulted in the breach of an independent duty not already defined by the contract. *Smith, Kunkel, Weeg* and *Hoffman, supra*. Fisher has not demonstrated that DOT breached any duties, rights, or obligations *independent* of those imposed upon them under the contract. *See Beck v. Farmers Insurance Exchange*, 701 P.2d 795, 800 (Utah 1985) (when "the duties or obligations of the parties are contractual rather than fiduciary ... a breach of those express or implied duties can give rise only to a cause of action in contract, not one in tort.").[4]

▇▇▇ [¶ 19.] *If one in good faith fully complied with the contract, one cannot be held liable for actions arising out of the contract under a theory of negligence.*

> Rights are not to be determined by playing a game of labels. If the relationship of the parties is such as to support a cause of action in tort, that cause of action is not to be denied because the parties happened also to have made a contract. Conversely, a breach of contract is not, standing alone, a tort as well. And it cannot be converted into a tort merely by attaching to the contract, or to the breach, new labels that sound in tort.

*Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F.Supp. 230, 238 (D.Mass.1983). " 'Conduct that is merely a breach of contract is not a tort.' " *Matter of Cert. of a Question of Law*, 399 N.W.2d 320, 322 (S.D.1987) (quoting *Weeg*, 82 S.D. at 109, 141 N.W.2d at 916).

[¶ 20.] In *Lesmeister v. Dilly*, 330 N.W.2d 95, 99 (Minn.1983), the Minnesota Supreme Court held apportionment of 5% fault to the defendant for negligence was inconsistent with the jury's finding no breach of contract by the defendant. The court recalculated the share of negligence, reducing this defendant's apportionment to 0%. *Id.* at 100. Likewise, in *Compton v. Polonski*, 567 S.W.2d 835, 839 (Tex.Civ.App.1978), a Texas appellate court, reviewing a jury's verdicts in which the jury found no breach of contract between the parties, but found the plaintiff had been negligent in fulfilling its obligations under the contract, characterized the two verdicts as "in fatal conflict." *Id.* at 840. *Compare Thibeault*, 313 N.E.2d at 588 (court found no error in directed verdict for defendant heating contractor on negligence and breach of contract claims where failure of defendant to perform a duty not required by parties' written contract did not render defendant liable for negligence); *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905, 909 (1985) (holding that "in a contractual setting, a tort action must rest on a breach of duty distinct from contract." Mere failure to perform an obligation under a contract "cannot give rise to a negligence cause of action in tort."); *Uptown Heights Assoc. v. Seafirst Corp.*, 320 Or. 638, 891 P.2d 639, 647 (1995) (holding that a party to a contract could not be liable in tort for conduct which the party was entitled to do under the contract, noting that "[a] contrary ruling would contravene public policy and under-

---

**4.** The dissent relies upon *Mid–Western*, 500 N.W.2d 250, for the thesis that an action for professional negligence may be maintained independently of a cause of action for breach of contract. *Mid–Western* is clearly distinguishable from the case now before us. Unlike the contractual relationship between DOT and Fisher, in *Mid–Western*, there was no contractual relationship between the parties. We recognized a duty in tort because to do otherwise would "deny a plaintiff his day in court." Herein, Fisher got its day in court on its breach of contract claim and it lost. We are now asked to expand *Mid–Western* such that even if one in good faith fully complied with the contract, one could still be held liable for actions arising out of the contract under a theory of professional negligence.

The argument of the dissent that DOT was guilty of professional negligence despite fully complying with its contractual obligations is illogical and sends the state of the law of contracts down

a dangerous and slippery path. It is serious enough when limited to the situation of professional negligence. However, if this thesis is valid to begin with, it will undoubtedly be argued in the future that there is no rational justification for limiting it to causes of action for professional negligence and precluding it for all other actions involving negligence. This is the very position advocated by the special concurrence in *Mid–Western*, 500 N.W.2d at 257 (Sabers, J., concurring specially).

How will contracting parties, and parties considering entering into a contractual agreement, be negatively influenced by the thought that even if they in good faith fully comply with the contractual obligations to a party with whom they have no other non-contractual relationship, they may still have to go through the substantial expense of a trial and be liable for even more substantial damages for negligence?

mine the stability of contractual relations."); *Interwest Const. v. Palmer*, 886 P.2d 92, 101 (Utah.App.1994) (defendant could not be held liable for negligence where there existed no duty independent of the parties' contract and no breach of the contract had been shown).

[¶ 21.] Here, Fisher bid a project without attempting to comply with the project's specifications. At that time, he simply took the position that he would use the material he chose regardless of DOT's requirements, "no if's, and's or but's." When forced by DOT to comply with the contract specifications, Fisher subsequently did not prevail in an action for breach of contract against DOT. The law is clear in this jurisdiction that a breach of contract does not, by itself, constitute a tort. We are unwilling to go even beyond this and hold that a contract, legally complied with, by itself may provide a basis for tort action based solely on that valid compliance. As such, Fisher cannot prevail in an action sounding in tort for DOT had no, and thus did not violate any, non-contractual duty towards Fisher.

[¶ 22.] Thus, we conclude that as DOT had no duty to Fisher outside of the contract and the jury found DOT did not breach that contract, an award in favor of Fisher based upon a negligence theory cannot be upheld. Our decision under this issue is dispositive of all other issues on appeal.[5] For the reasons set forth above, we reverse and remand with instructions to enter judgment in favor of DOT on the negligence claim as consistent with the jury's verdict on the contract claim.[6]

[¶ 23.] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 24.] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 25.] The jury was properly instructed on Fisher's negligence claims, and the evidence supported the negligence verdict. Even if we assume the majority's contrary conclusion is correct, we should remand for a new trial on all issues except negligence.

[¶ 26.] **1. The jury was properly instructed on Fisher's negligence claims.**

[¶ 27.] Actions against the State and the DOT are authorized by statute. SDCL 31–2–34 provides, in relevant part:

> The state of South Dakota may be sued and made a defendant in any court in which an action is brought against the South Dakota department of transportation respecting any claim, right, or controversy arising out of the work performed, or by virtue of the provisions of any construction contract entered into by the South Dakota department of transportation.

As provided in this statute, contractors are not restricted to bringing actions solely under the terms of a contract:

> The plain meaning of "any claim, right or controversy arising out of the work performed, . . .", SDCL 31–2–34, permits an action either under the terms of the contract or outside of it for work performed. This interpretation is also supported by the fact that the phrase is followed by the disjunctive phrase "or by virtue of the provisions of any construction contract. . . ." SDCL 31–2–34. If contractors are limited to actions under the provisions of the contract, then the phrase "any claim, right or controversy arising out of the work performed . . ." is meaning-

---

**5.** The dissent also argues that Fisher is entitled to a new trial based on improper jury instructions because the jury was instructed on theories of breach of contract and negligence. Fisher pled and argued its case on both theories of contract and tort, did not object to the jury instructions or verdict forms pertaining to both theories which instructed the jury that if it found for Fisher, it could do so on a theory of negligence, contract or both. Fisher did not file any post-trial motions claiming jury confusion or requesting a new trial. Failure to object to a jury instruction waives the issue for appeal. *Schaffer v. Edward*

*D. Jones & Co.*, 1996 SD 94, ¶ 15, 552 N.W.2d 801, 807 (1996). *See also* SDCL 15–6–59(a)(7) (grant of new trial due to error of law, such as instructions to the jury, "must be based upon an objection, offer of proof or a motion to strike."). Neither was this issue ever raised or briefed by Fisher on appeal. In other words, this issue raised by the dissent has never been raised by Fisher at any stage of this proceeding.

**6.** As we reverse on the merits, Fisher is also not entitled to any prejudgment interest. SDCL 21–1–13.1.

less. In interpreting statutes, all provisions within a statute must be given effect if possible. We believe that this interpretation gives effect to all of the provisions of SDCL 31–2–34.

*Candee Constr. Co., Inc. v. South Dakota Dep't of Transp.*, 447 N.W.2d 339, 344 (S.D. 1989), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1785, 108 L.Ed.2d 786 (1990) (citations omitted).

[¶ 28.] The construction contract in this case was entered into by Sundt Corporation and the State. Although Fisher was not a party to the contract, we recognize a cause of action for professional negligence when a foreseeable third party is injured. *See Mid–Western Elec., Inc. v. DeWild Grant Reckert & Assoc. Co.*, 500 N.W.2d 250 (S.D.1993). In *Mid–Western*, we allowed a cause of action against DGR, an engineering and architectural firm, which prepared drawings and specifications for fire detection and suppression systems for the Air National Guard base in Sioux Falls. Mid–Western was the contractor for the electrical portion of the project. When problems arose with ultraviolet detectors, they were replaced with ultraviolet infrared detectors. The Guard paid an additional amount for the new detectors but refused to give credit to Mid–Western for the ultraviolet detectors. Mid–Western sued several entities, including DGR, for its economic loss. Despite DGR's claim that it owed no duty to Mid–Western in the absence of a contract, we held "in South Dakota a cause of action exists for economic damage for professional negligence beyond the strictures of privity of contract."

To deny a plaintiff his day in court would, in effect, be condoning a professional's right to do his or her job negligently with impunity as far as innocent parties who suffer economic loss. We agree the time has come to extend to plaintiffs recovery for economic damage due to professional negligence.

*Id.* at 254. Therefore, a party may bring a cause of action in negligence against an architect or engineer for economic damages if the party was foreseeably harmed by the professional's negligence. *Id.* at 253.

[¶ 29.] Such a cause of action is allowed because, by the nature of their work, professionals such as engineers and architects are required to exercise their skill and judgment. "The reasonable skill and judgment expected of professionals must be rendered to those who foreseeably rely upon the services." *Waldor Pump & Equip. Co. v. Orr–Schelen–Mayeron & Assoc., Inc.*, 386 N.W.2d 375, 377 (Minn.Ct.App.1986). Lloyd Potter, the Pierre region engineer for DOT, testified that when contractors bid concrete paving work, they purchase aggregates from suppliers like Fisher. In this case, Fisher is not only a subcontractor to the contract between Sundt and the State, but also a third party which might foreseeably sustain damages from professional negligence.

[¶ 30.] According to Potter, subcontractors such as Fisher are bound by requirements drafted in contracts between the State and a contractor. It is foreseeable that a subcontractor bound to follow contract specifications prepared by the State could be harmed by the negligent drafting or interpretation of the specifications. *Mid–Western*, 500 N.W.2d at 254 (quoting *Waldor Pump*, 386 N.W.2d 375). Therefore, State owes a duty to use such skill and care as ordinarily exercised by others in the industry when drafting and interpreting its contract clauses. *Id.* A breach of that duty may result in tort liability to foreseeable third parties. *Limpert v. Bail*, 447 N.W.2d 48, 51–52 (S.D.1989).

[¶ 31.] Fisher claimed DOT was negligent in refusing to allow Fisher to use the Fort Yates sand. DOT argues Fisher's claims are "nothing more" than another way of saying that State breached its duty of good faith owed under the contract and therefore, Fisher's cause of action sounds in contract, not negligence. South Dakota does not recognize a tort action for breach of good faith independent of the contract or duty arising under contract. *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 842 (S.D.1990). Therefore, State argues Fisher was improperly allowed to argue this tort theory to the jury. However, we do recognize a duty to reasonably draft and interpret specifications in a contract. *Mid–Western*, 500 N.W.2d at 254. We also recognize that liability in tort may arise from breaching a duty to use proper care, even in the absence of a breach of contract. *Limpert*, 447 N.W.2d at 51. Although the negligence claim arose from

drafting the contract or interpreting the duties under the contract, it was proper to instruct the jury on Fisher's negligence claims according to South Dakota law. "Jury instructions are viewed as a whole and are sufficient if they correctly state the law and inform the jury." *Robbins v. Buntrock,* 1996 SD 84, ¶ 12, 550 N.W.2d 422, 426 (quoting *Sommervold v. Grevlos,* 518 N.W.2d 733, 739 (S.D.1994)).

[¶ 32.] **2. The jury's verdict of negligence was supported by the evidence.**

[¶ 33.] The jury returned a verdict for Fisher on the negligence cause of action. Fisher claimed State was negligent in failing to follow industry standards and in denying Fisher the right to use the Fort Yates sand, fly ash, or a blend of sands to comply with the addendum's requirement. Fisher also claimed State negligently drafted and interpreted its addendum.

[¶ 34.] The addendum is silent as to the addition of fly ash to meet the P 214 test requirements. State apparently anticipated the use of fly ash in sand to meet the expansion percentage allowed under its specifications. A summary of a presentation to the Research Review Board of DOT on June 13, 1991, stated: "The bad news is that roughly one-half of our current sand sources will require use of a fly ash in order to meet the 0.200% criteria." The addendum was issued four days later, on June 17, 1991. On June 24, 1991, the *Final Report: Alkali Reactivity of Concrete Aggregates,* prepared by Kenneth E. Marks of DOT, was completed. Its recommendations included: "any fine aggregates recording between .225 and .4% expansion would require the addition of Fly Ash (remove 10% Cement add 15% Fly Ash). This Fly Ash would be required to bring the expansion back to .225% or less."

[¶ 35.] Larry Engebrecht, chief materials and surfacing engineer for DOT, testified that the State wrote the addendum and "meant that the sand alone without the addition of fly ash should meet that criteria." He continued, "We thought we wrote it plain enough that only the sand aggregate had to meet that particular test result, not with the addition of fly ash." Mike Durick, a construction engineer for DOT, worked with others to develop the addendum. He admitted the addendum did not prohibit the use of fly ash and allowed for additional optional testing if the sand did not meet the specifications. He indicated the State could have clarified whether fly ash could be used by excluding one paragraph of the P 214 test.[7]

[¶ 36.] Steven Gebler, Fisher's expert witness, is a senior principal evaluation engineer with Construction Technology Laboratories in Illinois. Gebler testified that DOT's addendum, by including the P 214 test without excluding any of the test's sections, allowed for inclusion of fly ash to mitigate the expansion of the sand so the sand could meet the requirements of the test. He testified the P 214 test was a "screening test. Never meant to knock out any source whatsoever."

[¶ 37.] According to Gebler, the P 214 test method includes additional testing which incorporates combinations of sand, including sand combined with fly ash. Gebler testified that the addendum issued by DOT incorporated the entire test method of the P 214 test:

> When you reference a test, if you have a test method and if you want that whole thing to go in as part and parcel of a document, you would just cite the specification. But if you want to only have certain sections be applicable for that, then you can delete that part and you would have to say in mandatory language, for example, only sections so and so and so on apply. And if you don't say anything, that means the whole thing applies.

The State's wrongful or negligent conduct substantially damaged Fisher, and the evi-

7. The P 214 Proposed Test Method states, in part:

3.3 When it has been concluded from the results of tests performed using this proposed test method and supplementary information that a given aggregate should be considered potentially deleteriously reactive, *additional studies, possibly using alternative methods, may be appropriate to develop information* on the potential reactivity of other combinations containing the same cement with other aggregates, or the same cement-aggregate combination *with a mineral admixture* or ground blast-furnace slag. (Emphasis added.)

Fisher's expert, Steven Gebler, stated the "admixture they're talking about there can be the fly ash or silica fume or furnace slag."

dence on which the jury so found was clearly sufficient.

[¶ 38.] **3. Even under the majority's conclusion, we should reverse and remand this case for new trial on all issues except negligence.**

[¶ 39.] The State, through wrongful acts of its employees, damaged Fisher in the sum of $406,012.24. The jury believed Fisher was entitled to damages and awarded that amount. Now the majority opinion holds that the trial court erred in allowing the jury to consider the negligence cause of action. It is the trial court's duty to set forth instructions to the jury "as to the law of the case as it pertains to any theory of the parties supported by the evidence...." *LDL Cattle Co., Inc. v. Guetter,* 1996 SD 22, ¶ 33, 544 N.W.2d 523, 530 (citations omitted). If the majority is correct, and the negligence theory was improperly presented to the jury, the trial court erred in its instructions. When jury instructions mislead, conflict or confuse the jury, it constitutes reversible error. *Schaffer v. Edward D. Jones & Co.,* 1996 SD 94, ¶ 19, 552 N.W.2d 801, 808 (citing *Wallahan v. Black Hills Elec. Coop., Inc.,* 523 N.W.2d 417, 423 (S.D.1994)); *see also State v. Carver,* 286 N.C. 179, 209 S.E.2d 785, 788 (N.C.1974):

> It is well recognized in this jurisdiction that when there are conflicting instructions upon a material point, there must be a new trial since the jury is not supposed to be able to distinguish between a correct and incorrect charge.

(Citations omitted); *accord Buckles v. State,* 50 Ala.App. 552, 280 So.2d 820, 822 (Crim. 1973); *State v. Cronin,* 41 N.C.App. 415, 255 S.E.2d 240, 245 (N.C.Ct.App.1979); *State v. Slate,* 38 N.C.App. 209, 247 S.E.2d 430, 433 (N.C.Ct.App.1978); *cf. Veliz v. American Hosp., Inc.,* 414 So.2d 226, 228 (Fla.Dist.Ct. App.1982) ("The mere giving of two conflicting standards may, without more, constitute reversible error, even though one of the standards correctly applies."); *Mote v. Mote,* 134 Ga.App. 668, 215 S.E.2d 487, 491 (1975) ("A charge containing two distinct propositions conflicting the one with the other is calculated to leave the jury in such a confused condition of mind that they can not render an intelligible verdict, and requires the grant of a new trial.").

[¶ 40.] The jury was instructed that it could award damages for breach of contract, negligence, or both. The jury chose to award damages for negligence. According to a majority of this court, the trial court erroneously instructed the jury on negligence. In this case, we do not know whether the jury would have awarded damages under the contract theory if it was the only cause of action presented. When presented with similar circumstances in a prior appeal, we correctly held that the case must be reversed and remanded:

> It is now uncontroverted that Instructions 15 and 18 do not properly state the law as it applies to the circumstances surrounding this case. In this instance, it cannot be determined from the verdict which theory of liability—classic trespass or unreasonable trimming—was adopted by the jury.
>
> . . . .
>
> Under this framework, it is obvious that Instructions 13, 15 and 19 contradict the proper workings of the law. As such, they unduly emphasize Wallahan's former, and now rejected theory, and confuse and mislead the jury. Therefore, on this issue the case is reversed and remanded.

*Wallahan,* 523 N.W.2d at 423. The jury was told it could award full damages if it found State negligent. "Juries must follow the court's instructions." *In re Certif. of Questions (Knowles v. United States),* 1996 SD 10, ¶ 81, 544 N.W.2d 183, 202 (S.D.1996) (citing SDCL 15–14–11). The jury did as it was instructed and found in favor of Fisher for damages totaling $406,012.74. (S.D. 1996)

[¶ 41.] In view of the fact that the jury was fully instructed on two theories, one permissible and one, according to the majority, impermissible, Fisher is entitled to a new trial with proper instructions. Even under the majority's view, we should reverse and remand for a new trial on all issues except negligence.