Jim HOFFMAN, d/b/a Hoffman Trucking, Leonard Hunsley and Duane Hunsley, d/b/a Hunsley Trucking, George Kimbley and Morris Irrigation, Inc., Plaintiffs and Appellees,

v.

The LOUIS DREYFUS CORPORATION and Roger Koch, Defendants and Appellants,

and

Roger Petersen, d/b/a R & R Livestock, Clyde Keough, d/b/a Lewis Special, and Bud Smith, Defendants.

Nos. 15828, 15839.

Supreme Court of South Dakota.

Considered on Briefs Feb. 16, 1988.

Decided Jan. 18, 1989.

Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiffs and appellees.

William J. Srstka of Olinger, Srstka, Lovald & Robbennolt, Pierre, defendants and appellants; Lee C. (Kit) McCahren, on the brief.

MORGAN, Justice.

This appeal lies from the consolidated trial of two lawsuits. The first, a declaratory judgment action, was commenced by Louis Dreyfus Corporation (Dreyfus) against James Hoffman d/b/a Hoffman Trucking (Hoffman), and Clyde Keough (Keough) and Willard Smith (Smith) d/b/a Lewis Special. The second was commenced by the aforementioned Hoffman, Leonard and Duane Hunsley d/b/a Hunsley Trucking (Hunsley), George Kimbley (Kimbley)

and Morris Irrigation, Inc. (Morris), against Dreyfus, Keough, Smith, Roger Koch (Koch) and Roger Petersen (Petersen) d/b/a R & R Livestock. Keough filed for bankruptcy and was dismissed from the case. Smith did not appear and a default judgment was granted against him. At the close of the evidence, the trial court directed a verdict against Hunsley, Kimbley and Morris, except as to Smith. The jury returned a verdict in favor of Hoffman. These appeals arise from both aspects of the judgment. We affirm.

Hoffman's action arises from two contracts entered into between himself and two separate parties purportedly acting for or representing Dreyfus. Both contracts were for the hauling of cattle, owned by Dreyfus, to various locations on the Cheyenne River Reservation for summer pasturage and the eventual removal when the cattle were taken off grass.

The first contract, the Keough contract, was entered into by Hoffman with Keough and Smith. Hoffman was aware that the cattle belonged to Dreyfus, but it was disputed whether he knew the exact relationship between Dreyfus and Keough. During the period from early February through March 1, 1985, Hoffman trucked cattle to various South Dakota pastures. All trucking charges were timely paid by Keough during that period. Hoffman continued to haul for Keough through July 1, 1985, when the trucking charges reached $12,217.50, and payment was not forthcoming.

The second contract, the Koch–Petersen contract, was entered into by Hoffman with Koch and Petersen, who, in April of 1985, had represented themselves to Hoffman as Dreyfus' agents. Koch and Petersen met with Hoffman again in mid-July. Hoffman testified that Koch and Petersen informed him that Keough had been relieved of his services and that Dreyfus would guarantee payment on the unpaid trucking charges under the first contract if Hoffman would help retrieve the cattle from the reservation. Koch and Petersen denied any guarantee was made concerning the unpaid trucking charges.

On July 18, Hoffman began hauling cattle under the Koch–Petersen contract and by August 8, an additional $14,492.00 in unpaid trucking fees had accrued. Hoffman began to press for payment and was told by Koch and Petersen that they were not going to pay trucking bills under the Keough contract. When Hoffman promptly objected, he was sent to Koch's attorney who then advised him that Dreyfus would not pay the trucking fees under the Koch–Petersen contract unless Hoffman agreed to release Dreyfus from the trucking charges under the Keough contract. Hoffman instituted this suit.

The other plaintiffs in this action, Hunsley, Kimbley, and Morris also claim to have unpaid debts for services or feed provided to Keough. It is contended that at the April meeting between Hoffman, Koch, and Petersen, Hoffman and his secretary were told to include bills from these parties and these bills would also be paid. They were never paid and their claims were included in Count II. At the close of the evidence the trial court granted a directed verdict against Hunsley, Kimbley, and Morris except as to the defaulted Smith.

We deem it necessary to relate the causes of action as brought by Hoffman to their origin. In Count I, Hoffman sought recovery in contract for the trucking charges incurred under the Koch–Petersen contract. In Count II, Hoffman also sought recovery in contract for the trucking charges incurred under the Keough contract. In Count III, in tort, Hoffman sought compensatory and exemplary damages alleging that Koch and Dreyfus fraudulently deceived him into performing the Koch–Petersen contract.

In the answer and cross-claim, Dreyfus admitted liability for payment of the Koch–Petersen contract (Count I), denied liability under the Keough contract (Count II) and, under Count III, and requested a court order for release for payment to Hoffman of $14,492 tendered therewith. This was accomplished by a stipulation and order which further provided that such payment did not constitute a waiver or release of any rights of the parties in the pending

litigation. Thus, the case went to the jury on two counts. The first was on the original Count II for the past-due trucking expenses under the Keough contract. The second was on the alternative theory of Count III, for damages for deceit in inducing performance of the Koch–Petersen contract, and for punitive damages.

The jury held that Keough was an agent of Dreyfus and returned a jury verdict for Hoffman on the contract theory (Count II) awarding him $12,217.50. On the theory of deceit (Count III), the jury fixed Hoffman's actual damages at $12,217.50, and awarded punitive damages in the sum of $24,000.

Dreyfus and Koch frame their issues on appeal as follows:

(1) Whether there was sufficient evidence for the jury to find that Keough, d/b/a Lewis Special was an agent of Louis Dreyfus Corporation. (Count II)

(2) Whether there was sufficient evidence, as a matter of law, to allow [Hoffman's] cause of action based upon alleged deceit to be submitted to the jury. (Count III)

(3) Whether there was sufficient evidence for the trial court to submit [Hoffman's] claim for punitive damages to the jury. (Count III)

Hunsley, Kimbley and Morris Irrigation also petitioned for review on the issue of whether there was sufficient evidence to support a jury issue on their claims against Dreyfus and Koch. We will review the Hoffman judgment first.

In resolving sufficiency of the evidence issues on appeal, this court examines the record to determine only if there is competent and substantial evidence to support the verdict. We resolve all conflicts and draw all reasonable inferences therefrom in favor of the verdict. *Kostel Funeral Home, Inc. v. Duke Tufty Co.*, 393 N.W.2d 449 (S.D.1986); *Zee v. Assam*, 336 N.W.2d 162 (S.D.1983). There is substantial competent evidence to support the jury verdict on Count II. Although the evidence may have been disputed as to Keough's representations to Hoffman, and Koch's and Petersen's representations to Hoffman, these were questions of credibility for the jury to decide.

■ Because the jury instruction on agency * was not objected to, it is the law of the case. However, that does not resolve the sufficiency of the evidence issue. To determine whether an agency relationship exists, we examine the relations of the parties as they exist under their agreement or acts. *Kasselder v. Kapperman*, 316 N.W.2d 628 (S.D.1982); *Watkins Company v. Dutt*, 84 S.D. 453, 173 N.W.2d 41 (1969). Whether the agency relationship has been created depends upon the existence of the following factual elements: " '... The manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking.' " *Southard v. Hansen*, 376 N.W.2d 56, 58 (S.D.1985); *Kasselder, supra; Watkins Company, supra.*

In support of the argument that there was insufficient evidence to support the jury verdict that Keough was an agent of Dreyfus, Dreyfus points to the contract entered into between Dreyfus and Keough denominated a "Range Feeding Agreement." This agreement purportedly made Dreyfus liable for transportation expenses to deliver the cattle to the Diamond Ring Ranch and to remove them therefrom. While he further testified that under that agreement Keough was responsible for "veterinary work, trucking, feed bills, anything that had to do with care of the cattle, until they were moved," he also testified to a side agreement by R & R to reimburse

---

* Jury Instruction Number 9 framed the issues of agency as follows:

Agency is the representation of one called the principal by another called the agent in dealing with third persons.

An agent is a person who, by agreement with another, called a principal, represents the principal in dealings with third persons, by authority and upon the account of the principal who has the right to control and direct the activities of the agent and to terminate his agency. This agreement may be written or oral, express or implied, and the relationship does not depend upon the payment of monetary compensation.

Keough at the rate of $2.00 per head for extra trucking. We find this to be unpersuasive in view of the fact that Hoffman was not a party to either of these agreements. There is nothing in the record to indicate that he was aware of them. The issue before the jury was whether or not Hoffman had reason to believe and did believe that Dreyfus was in control of the operation. The jury determined that Keough was the agent of Dreyfus at the time the Keough contract was entered into and, accordingly, awarded Hoffman the trucking charges due under that contract. We affirm on that issue.

■ The second and third issues raised by Dreyfus and Koch will be treated together. At trial, by appropriate motions for directed verdicts, and by objections to instructions, and again on appeal, they earnestly charge that it was error to submit the issue of deceit and the claim for punitive damages to the jury. At trial, the motion for directed verdict was couched as follows:

—first of all, I move for a directed verdict at the close of all of the evidence and against the Plaintiff Hoffman on the issue of punitive damages. And on the issue of deceit, there is just—the case has boiled down to a dispute over a bill, and as to who said what. The Defendants state that they never made any promises to Hoffman, Hoffman says they did. But, there has been absolutely no malice shown, there has been no oppression shown, there has been absolutely nothing shown that would warrant submitting the issue of punitive damages to the jury, and it was strictly a business-type decision, it is not an action sounding in tort, it is an action sounding in contract, and all actions sounding in contract (sic) there is no right nor any kind of exemplary or punitive damages.

And again, in settling jury instructions, objections were made as follows:

—we object to four and specifically the reason for the objection is, of course, that it gives the deceit part of the instruction, or gives the deceit part of the lawsuit. Also, I think it is confusing inasmuch as the jury may think that it is entitled to bring back a verdict—several $12,217.50 verdicts.—Just wanted to add on number four, Your Honor, the exemplary damages is part of the deceit, part of my objection there, too.

On appeal, Dreyfus and Koch argue further that (1) Hoffman failed to prove any actual damage resulting from the alleged misrepresentation; and (2) the claim was merely Hoffman's version of the terms of the Koch–Petersen contract and thus punitive damages were not recoverable in a contract action.

We first consider the underlying thread of Dreyfus' argument, that punitive damages are not recoverable in an action for damages in contract.

Exemplary damages are not ordinarily recoverable in actions for breach of contract, because, as a general rule, damages for breach of contract are limited to the pecuniary loss sustained.

22 Am.Jur.2d *Damages* § 751 (1988). *See also* SDCL 21–1–4, 21–2–1 and 21–2–2.

We agree with this proposition generally, but we must recognize another long-standing proposition. "It may be conceded that tort usually signifies a breach of legal duty independent of contract. But such breach of duty may arise out of a relation or state of facts created by contract." *Smith v. Weber*, 70 S.D. 232, 236, 16 N.W.2d 537, 539 (1944). As more recently stated: "Conduct which merely is a breach of contract is not a tort, but the contract may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to tort liability." *Kunkel v. United Security Ins. Co.*, 84 S.D. 116, 135, 168 N.W.2d 723, 733 (1969).

The independent tort must be separate and distinct from the breach of contract. While the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if such act is intentional.

22 Am.Jur. § 752 (1988).

The dispute arises from the negotiations and inception of the Koch–Petersen con-

tract. Counsel for Dreyfus and Koch argues that there is a dispute over whether or not any promise was made to pay the overdue charges on the Keough contract, and that the attempt to secure the release of such liability as a condition of payment of the Koch–Petersen contract was simply a good business ploy. Hoffman, on the other hand, argues that the promise to pay the Keough contract was made to forestall him from taking any action to protect his claim; for instance, imposing a lien on the cattle, and that the subsequent refusal to pay after the cattle were safely out of reach shows deceit. He terms this business ploy as blackmail. In any event, the jury, by its verdict, has resolved the disputes in the testimony. The verdict specifically found deceit on the part of Koch and Dreyfus. Our scope of review requires us to uphold that finding if there is any evidence to support it. *Sharkey v. Washington Nat. Ins. Co.*, 373 N.W.2d 421, 426–27 (S.D.1985); *Kostel, supra; Zee, supra.*

The promise to pay up the Keough contract, while not a term of the agreement, was obviously an inducement to Hoffman to enter into the contract. Having once been burned, it is unlikely that Hoffman would stick his hand in the flame again without some assurance of safety. Dreyfus admitted liability and paid the bill due for the actual hauling under the second agreement. However, Hoffman was not compensated for the breach of the promise to pay the Keough contract. To restrict him solely to the compensation for hauling, which he had earned by his separate efforts, would deprive him of compensation for the refusal on the part of Dreyfus to pay the Keough contract and would reward Dreyfus for the deceitful conduct. By stipulation, Hoffman received his compensation for the performance of the second contract. By the same stipulation, he did not waive or release any of his rights in the pending litigation.

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20–10–1. The measure of damages in deceit, as in other tort actions, is founded upon the theory of full compensation for the injury sustained. *Trautman v. Coffman*, 39 S.D. 628, 166 N.W. 150 (1918); SDCL 21–3–1.

Dreyfus contends that Hoffman has not proved any actual damages suffered as a result of the deceit and, therefore, is not entitled to punitive damages. *Speck v. Anderson*, 349 N.W.2d 49 (S.D.1984); *Johnson v. Kirkwood Inc.*, 306 N.W.2d 640 (S.D.1981). Although Hoffman testified that the trucking he did for Dreyfus after the July agreement was unprofitable and that, because of poor cash flow caused by Dreyfus' failure to pay Keough's trucking charges, he had to borrow money in larger than usual quantities, he failed to offer any evidence as to the resulting damages. It is obvious, however, that Hoffman did suffer actual damages in the amount of the unpaid trucking charges.

The jury was instructed on this issue as follows:

—you would then have a separate and individual issue to determine; namely, whether Roger Koch and/or Roger Petersen promised and agreed with Jim Hoffman that the Louis Dreyfus Corporation would pay him for his unpaid trucking bill in the amount of $12,217.50, if Hoffman did continue to truck livestock belonging to the Louis Dreyfus Corporation off of the Cheyenne Indian Reservation.

If you should decide that such a promise was made by defendants Koch and Petersen, and that such a promise was relied upon by the plaintiff Hoffman, you should then enter a verdict for Hoffman against Koch and Petersen *for the amount of said unpaid trucking charges.* (Emphasis added.)

The next issue you should have to determine is whether or not Koch and Petersen were acting as agents for the Louis Dreyfus Corporation at the time that they made the promises or agreement with Hoffman, and if you find that they were acting as agents of Louis Dreyfus Corporation, you should then enter your verdict finding the Louis Dreyfus Corpo-

ration jointly liable with Koch and Petersen for such unpaid trucking charges.

It is important to note, however, in conjunction with this discussion, that Hoffman was not entitled to double recovery of the sum of $12,217.50. As the trial court stated in settling instructions:

> Now, as a matter of fact, as a rule of law, for any reason it would come back twice an amount, my position would be, I would correct the verdict form because the total amount of damages, actual damages they can find is twelve thousand whatever.

While the jury fixed Hoffman's compensatory damages at $12,217.50, the same as they allowed as his damages under the Count of the Keough contract, the trial court entered judgment only in the sum of $12,217.50 actual damages, plus prejudgment interest and costs, and the sum of $24,000.00 exemplary damages as found by the jury. We find competent and substantial evidence to support the jury verdict. Therefore, we affirm issues two and three.

■ By notice of review, Kimbley, Hunsley, and Morris seek review of the directed verdict and judgment entered against them on their claims against Dreyfus, Koch and Petersen. The claims of these parties were for trucking and silage bills incurred by Keough prior to January 1985. It was the testimony of Hoffman that, at the April 1985 meeting with Koch and Petersen regarding his past due bills, he was told by Koch or Petersen to include the bills of the other named parties with those he was sending to R & R Livestock.

At the close of the plaintiffs' case, the trial court granted the defense motion for directed verdict. The trial court determined there was no evidence to show that Keough, who had incurred the bills, was an agent of Dreyfus at the time the bills were incurred.

When reviewing a ruling on a directed verdict, this court views the evidence in a light most favorable to the nonmoving party. *Sabag v. Continental South Dakota*, 374 N.W.2d 349 (S.D.1985). If there is competent and substantial evidence to support the verdict, it must be upheld. If

there is evidence to allow reasonable minds to differ, then a directed verdict is inappropriate. *Wangen v. Knudson*, 428 N.W.2d 242 (S.D.1988). The trial court's ruling on a motion for direct verdict is presumed to be correct and this court will not seek reasons to reverse. *Sabag, supra.*

Kimbley had a bill for silage hauling in the amount of $4,167.83, Hunsley had a bill for silage in the amount of $1,494.80 and Morris had a bill for silage hauling in the amount of $2,111.60. None of these parties had ever contacted or been contacted by Koch or Petersen. In fact, Morris testified that when told by Hoffman to send in his bill to R & R, he "elected to go ahead and proceed on the basis that we had already started on." Nor is there any evidence that the other two relied on the alleged promise any further than to send copies of their respective bills to Hoffman, who in turn forwarded them to R & R. There is no evidence in the record of any consideration for the alleged R & R promise to pay the other bills. While their counsel argues in his brief that they forbore proceeding against the cattle in reliance upon the alleged promise, there is no evidence in the record to support that statement. Nor is there any evidence that Hoffman was acting as an agent for any of the others. It was apparently a voluntary move on his part to protect his friends. Because we do not find that the trial court was clearly erroneous in its assessment of the evidence, we affirm the entry of the directed verdicts.

We affirm in all respects.

All the Justices concur.