**MOONEY'S, INC., Plaintiff and Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

**No. 17397.**

Supreme Court of South Dakota.

Argued Sept. 9, 1991.

Decided March 4, 1992.

Dean B. Thomson, Carrie A. Green, Fabyanske, Svoboda, Westra, Davis & Hart, P.A., St. Paul, Edward C. Carpenter, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellant.

Ronald W. Banks, Banks, Johnson, Johnson, Colbath and Hoffman, P.C., Rapid City, for defendant and appellee.

SABERS, Justice.

Contractor appeals partial summary judgment. We affirm.

### FACTS

Mooney's, Inc. (Mooney's) is a Minnesota based contractor. Mooney's received notices soliciting bids on three asphalt resurfacing projects from the South Dakota Department of Transportation (DOT). The first was for resurfacing Highway 273 in Lyman County, the second and third were for resurfacing Route 6154 and Highway 26 in Sully County. Mooney's received the notices three weeks prior to the time the bids were due. The notices did not include the plans and specifications of the projects, which Mooney's then requested. This information arrived a week later.

The plans and specifications designated two gravel pits as sources of aggregate for the respective projects. Aggregate, or gravel, is an important material in road construction. Two qualities of aggregate are significant in determining its acceptability for use in building a highway: plasticity and gradation. Plasticity is a measure of the aggregate's cohesiveness. Gradation refers to the distribution of particle sizes in the aggregate, from coarse to fine.

The South Dakota Standard Specifications for Roads and Bridges specify acceptable ranges of values for both plasticity and gradation for aggregate to be used on the State's highways.

The bid information contained extensive "pit data" on the designated pits for Lyman County and both Sully County projects. DOT employees had taken samples from 20 locations at the Sully County pit and 8 and 22 locations respectively from areas A & B in the Lyman County pit. The samples were tested for gradation and plasticity with the results detailed in the bid information. The data sent by DOT to all prospective bidders not only showed the test results, but also DOT's evaluations as to the pit averages, haul distances, areas of the pits that should be excavated and the quantities of material that would need to be processed or crushed. The prices and restoration requirements from each pit were also shown. Several financial incentives were provided for using the material from these pits, including no payment required for rejected material.

The pit data sent by DOT consisted of 12 pages on Lyman and 24 pages on Sully and contained two printed disclaimers:
[On the top]:

#### THIS IS NOT A SPECIAL PROVISION FOR INFORMATION ONLY

[On the bottom]:
The information covering the pit for the project are given to you *for informational purposes only.* The Department of Transportation does not guarantee the quantity or the quality of the material listed in the above information. Interested Contractors should investigate the area before considering it for bidding purposes. (Emphasis in original).

Due to time constraints, Mooney's relied upon the pit data and did not perform its own testing on the pits. Neither pit contained the types and quantities claimed by the DOT pit data. Mooney's was forced to process approximately double the amount of material that would have been required had the pit data been accurate.

Mooney's states that both Sully County Engineer Norman Konechne and Lyman

County Engineer Larry Engebrect were present at the respective pits throughout the excavation process. The engineers were aware of Mooney's difficulties in obtaining conforming aggregate and both made recommendations as to processing methods. DOT contends that industry practice requires the splitting of materials and blending them to maintain better control over gradation and plasticity. Therefore, DOT claims that it was only Mooney's that perceived the extra processing as unforeseen or unanticipated.

Mooney's did not provide DOT with written notice of a claim for additional compensation or otherwise follow the claims procedure outlined in the contract. Mooney's sued DOT for the additional compensation arising out of the three projects. The trial court granted DOT's motion for partial summary judgment as to Mooney's claims stating that, as a matter of law: (1) DOT had not breached any implied warranty of accuracy as to the bid information; (2) Mooney's had not complied with the notice provisions of the contract; and (3) Mooney's was not entitled to recover on the basis of quantum meruit due to the existence of an express contract between the parties.

### 1. IMPLIED WARRANTY AS TO ACCURACY

■ The standard of review of a motion for summary judgment is "whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Gasper v. Freidel*, 450 N.W.2d 226, 228 (S.D.1990) (*quoting Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989)). Based on the evidence presented to the trial court, we must decide whether an implied warranty of accuracy was created by inclusion of the pit test data in the bid information, and if so, whether such an implied warranty was negated by the printed disclaimers.

At the outset, it is important to note that *G.H. Lindekugel & Sons, Inc. v. South Dakota State Highway Commission*, 87 S.D. 32, 202 N.W.2d 125 (1972), which forbid recovery of damages in excess of the contract price where there had been no specific appropriation, was overruled by *Candee Const. v. Dept. of Transportation*, 447 N.W.2d 339, 345 (S.D.1989), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1785, 108 L.Ed.2d 786 (1990). Therefore, there is no precedent barring a claim for compensation in excess of the contract. However, whether an implied warranty of accuracy exists depends on the facts of the case.

The validity of an implied warranty of accuracy was recognized by the United States Supreme Court in *United States v. Spearin*, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918). In *Spearin*, the contractor was required to build, in accordance with plans and specifications furnished by the Government, a by-pass sewer system as part of the construction of a dry-dock. The sewer proved to be inadequate, flooded the worksite and caused the contested damages. The Court stated:

> Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. Thus one who undertakes to erect a structure upon a particular site, assumes ordinarily the risk of subsidence of the soil. But if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. This responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work.

*Id.* (Citations omitted). The Court then stated that:

> [T]he insertion of the articles prescribing the character, dimensions and location of the sewer imported a warranty that, if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor, to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance.

*Id.* at 137, 39 S.Ct. at 61. In *Metropolitan Sewerage Com'n. v. R.W. Const.*, 72 Wis.2d 365, 241 N.W.2d 371, 379 (1976), the Wisconsin Supreme Court stated:

> A contractor ... is also held to the standard of what a reasonable contractor should have anticipated on the project. ... it would be unfair for a contractor to receive an upward adjustment in price for a condition which any reasonable contractor would have anticipated in approaching the project. That which any reasonable contractor should have anticipated is derived from a blend of his past experience, the ,customs and insights shared generally by contractors in the area, and *the information conveyed by the contract.*

(emphasis added).

The "construction of a written contract is a question of law for this court to consider." *Western States Land v. Lexington Ins.*, 459 N.W.2d 429, 432 (S.D.1990); *see also Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D.1990); *Dirks v. Sioux Valley Empire Elec. Ass'n.*, 450 N.W.2d 426, 427–28 (S.D.1990); *North River Ins. Co. v. Golden Rule Const.*, 296 N.W.2d 910, 912 (S.D. 1980); *Delzer Const. Co. v. South Dakota State Bd. of Transp.*, 275 N.W.2d 352, 355 (S.D.1979). Whether the language of a contract is ambiguous is also a question of law. *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D.1986).

Mooney's contends that DOT created an implied warranty of accuracy by providing pit test data from the Lyman and Sully County pits in the bid information. The gravel pit sampling data provided by DOT to Mooney's was not a part of the plans and specifications and provided on its face, *all in capital letters*, and *all underlined*, as follows:

### THIS IS NOT A SPECIAL PROVISION FOR INFORMATION ONLY

The contract provided that the DOT "does not guarantee the quantity or quality of the material listed in the above information." It further provided, *"Interested contractors should investigate the area before considering it for bidding purposes."* (emphasis added). Moreover, the contract provided a specific contractual remedy in § 6.2 when, through no fault of the contractor (Mooney's), subbase, base course, and surfacing materials could not be secured and used as shown in the plans:

> Should the plan designated sources fail ... it shall be the Contractor's responsibility to furnish satisfactory materials from other sources, without additional cost to the state except the payment provided for the extra haul.

The unambiguous language of a contract defeats an implied warranty claim. There is no ambiguity in this case as to the parties intentions. The burden was placed on Mooney's, by express contract, to determine the nature of the material in the pits. It appears that Mooney's would now try to escape this contracted responsibility through use of an implied warranty theory.

In *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 221 (Iowa 1988), the Iowa Supreme Court held that:

> In allocating that risk, courts have universally applied a rule first expounded in a line of Supreme Court cases. The rule provides that the government is not liable to a contractor for breach of implied warranty unless it misrepresents material facts through concealment or false statements. In essence, this rule established that no implied warranty will arise when the government, in good faith, presents all the information it has on subsurface conditions to the contractor.

(citations omitted). In this regard, Mooney's has not alleged misrepresentation on the part of DOT.

The contract is unambiguous. The rights and obligations of the parties are explicit. The parties' intentions relative to the contract are clear. Accordingly, the inclusion of the pit data did not create an implied warranty and the trial court properly granted summary judgment on this issue. Therefore, it is not necessary to determine further the effect of the printed disclaimers.

### 2. NOTICE

In view of our holding on issue 1, it is not necessary to discuss issue 2 concerning

Mooney's failure to comply with the notice of claim provisions of the contract.

### 3. QUANTUM MERUIT OR UNJUST ENRICHMENT

■ Mooney's final contention on appeal is that the trial court erred in granting summary judgment to DOT as to Mooney's quantum meruit or unjust enrichment claim. Mooney's claims that the inaccuracies of the pit data forced it to process unanticipated quantities of aggregate to wind up with the amount required under the contract. The amount of gravel required under the contract and that which was supplied by Mooney's does not appear to differ. Thus, DOT only received what was contemplated under the contract.

In *Thurston v. Cedric Sanders Co.*, 80 S.D. 426, 125 N.W.2d 496, 498 (1963), this court stated that quantum meruit does not provide a basis for recovery when a valid express contract exists between the parties, fixing the rights of each.

> There is no question but what, where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or suit on quantum meruit.

*Id.* (citations omitted). In *Reif v. Smith*, 319 N.W.2d 815, 817 (S.D.1982), we stated that in cases where the contract is substantially performed "recovery is on the contract not in quantum meruit." In this case there was an express contract; Mooney's provided and DOT received what was contemplated by the contract. Therefore, summary judgment on this issue was proper and we affirm.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST and HENDERSON, JJ., concur in result.

WUEST, Justice (concurring in result).

It appears to me the majority opinion seeks to implant the implied warranty of accuracy theory in the law of this state. In my view, that is unnecessary to decide this case and I would leave that determination for the appropriate case. I do concur with the rest of the decision and vote to affirm.

HENDERSON, Justice (concurring in result).

Although I agree with the result of this opinion, I do not agree on the discourse of the validity of an implied warranty of accuracy. There are approximately 500 words dedicated to the author's work product on that theory. It is totally unnecessary in deciding this case. Simply put, we are not deciding this case on such a theory. Quite to the contrary, we are deciding that the *unambiguous language of the contract before us defeats an implied warranty claim.*

When this Court has decided cases in the past pertaining to this type of action, we never alluded to—nor cited—nor adopted *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918). We did not sanction *Spearin* as authority.

Author also quotes the holding in *Metropolitan Sewerage Com'n. v. R.W. Const.*, 241 N.W.2d 371, 379 (Wis.1976). In our previous decisions on this subject, we have never mentioned or cited to this case.

If the reader will peruse *Candee Const. v. Dept. of Transportation*, 447 N.W.2d 339, 345 (S.D.1989), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1785, 108 L.Ed.2d 786 (1990), it will be noted that neither *Spearin* nor the *Metropolitan Sewerage* case was cited in *Candee*. It is obvious that this Court chose not to adopt the implied warranty of accuracy theory.

What must the South Dakota Department of Transportation express, in its future contracts, to escape this obiter dicta?

As the *Midwest Dredging Co. v. McAninch Corp.* case in the Iowa Supreme Court case in 1988 expresses: "No implied warranty will arise when the government, in good faith, presents all the information it has on subsurface conditions to the contractor." Further, the Iowa court held: "As a general rule, if the construction contract places that risk with one party, such party must absorb the loss if unexpected conditions arise."

Obiter dicta here opens a crack in the door, nay, creates the opportunity, for cost-

**48**

ly litigation for South Dakotans. There-
fore, I concur in result only.