#25112, #25128-r-JKM

**2009 SD 96**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TATE D. SCHIPPOREIT and
SARAH E. SCHIPPOREIT,                    Plaintiffs and Appellees,

  v.

GHAZANFAR KHAN,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RANDALL L. MACY
Judge

\* \* \* \*

THOMAS E. BRADY
KAREN PAIGE HUNT
RICHARD A. PLUIMER of
Brady & Pluimer, P.C.
Spearfish, South Dakota                  Attorneys for plaintiffs
                                         and appellees.


SCOTT SUMNER                             Attorney for defendant
Rapid City, South Dakota                 and appellant.

\* \* \* \*

ARGUED AUGUST 26, 2009

OPINION FILED **11/04/09**

MEIERHENRY, Justice

[¶1.] Tate and Sarah Schipporeit (Schipporeits) brought suit against Ghazanfar Khan claiming breach of contract, conversion, and fraudulent misrepresentation. Schipporeits sought compensatory and punitive damages. A jury found in favor of Schipporeits on all claims and awarded compensatory and punitive damages. Khan asserts that the conversion and fraudulent misrepresentation claims, along with the punitive damages request, should have been dismissed because the claims were not independent torts apart from the breach of contract claim. We agree and reverse.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] This dispute centers on the purchase and sale of a Quality Inn in Spearfish, South Dakota, owned by Khan. On April 17, 2007, Schipporeits executed a purchase offer for the purchase of the Quality Inn from Khan. Khan agreed to sell the Quality Inn to Schipporeits for $1,700,000. The agreement originally specified a closing date of May 31, 2007.

[¶3.] Prior to the closing date, Khan denied that a contract existed and refused to perform on the purchase offer. As a result, Schipporeits filed suit against Khan for specific performance and damages for breach of contract. Khan denied the basis for the claim maintaining that the April 17, 2007, purchase offer did not create a binding contract. The parties subsequently agreed to complete the transaction pursuant to the purchase offer. Schipporeits did not waive their claims against Khan for damages, costs, expenses, disbursements, or attorneys' fees. The

closing date was set for July 19, 2007. The parties completed the sale and transferred the property on August 3, 2007.

[¶4.]          Schipporeits immediately initiated suit against Khan for breach of contract, conversion, and fraudulent misrepresentation. Schipporeits' claims for conversion and misrepresentation were based on allegations of missing property, supplies, equipment, and room reservations. The parties tried the case to a jury over three days beginning October 6, 2008. The jury awarded Schipporeits damages for breach of contract in the amount of $148,889, damages for conversion in the amount of $28,336, damages for fraudulent misrepresentation in the amount of $11,234, and punitive damages in the amount of $317,900. Khan filed a motion for a new trial and renewed his motion for judgment as a matter of law. The trial court denied Khan's motions.

### ISSUE

[¶5.]          Khan's issue on appeal is whether the trial court erred in submitting Schipporeits' tort claims for conversion and fraudulent misrepresentation, along with punitive damages, to the jury. Khan has not appealed the jury's award of $148,889 in damages for Schipporeits' breach of contract claim.

### ANALYSIS

[¶6.]          Whether Schipporeits' conversion and fraudulent misrepresentation claims are independent torts is a question of law that we review de novo. Grynberg v. Citation Oil & Gas Corp., 1997 SD 121, ¶22, 573 NW2d 493, 500 ("The existence of a legal duty is a question of law.") (citation omitted). If the facts do not support the independent tort claims, Schipporeits are not entitled to punitive damages. As

a general rule, punitive damages are not recoverable in a breach of contract claim. *Grynberg*, 1997 SD 121, ¶17, 573 NW2d at 500. *See* SDCL 21-3-2. The public policy reasons for this rule are explained in *Grynberg* as follows:

> First, breach of contract is generally a private injury, unlike a malicious tort, which some authorities have held to be a public injury. Second, our free market system allows economically efficient breaches of contract, for example, when it costs less for one party to breach an unwise contract and to pay the other party compensatory damages than it would cost to completely perform the contract. Third, "[w]hile compensatory damages encourage reliance on business agreements, the threat of additional punitive damages would create uncertainty and apprehension in the marketplace."

1997 SD 121, ¶17, 573 NW2d at 500 (internal citations omitted).

[¶7.] Punitive damages are recoverable only when a "party can prove an independent tort that is separate and distinct from the breach of contract." *Id.* ¶18. *See* Smith v. Weber, 70 SD 232, 236, 16 NW2d 537, 539 (1944). We said in Grynberg that "'[c]onduct which merely is a breach of contract is not a tort, but the contract may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to tort liability.'" *Grynberg*, 1997 SD 121, ¶18, 573 NW2d at 500 (quoting Hoffman v. Louis Dreyfus Corp., 435 NW2d 211, 214 (SD 1989)). Tort liability requires "a breach of a legal duty independent of contract." *Id.* This independent legal duty must arise "from extraneous circumstances, not constituting elements of the contract." *Id.* "[E]very contract contains an implied covenant of good faith and fair dealing [that] prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." Farm Credit Servs. of Am. v. Dougan*, 2005 SD 94, ¶8, 704 NW2d 24, 27 (citations omitted). Consequently, an independent legal duty

must extend beyond a contract's implied covenant of good faith and fair dealing.  We

previously indicated that "South Dakota does not recognize an independent [tort]

for breach of the implied covenant of good faith and fair dealing."  *Dougan*, 2005 SD

94, ¶6, 704 NW2d at 27.  An independent legal duty may be related to a contract

between the parties, but it must be "born of that wider range of legal duty which is

due from every man to his fellow, to *respect his rights of property* and person, *and

refrain from invading them by* force or *fraud.*" *Grynberg*, 1997 SD 121, ¶21, 573

NW2d at 501 (emphasis in original) (quoting *Smith*, 70 SD at 236, 16 NW2d at 539).

This Court has recognized the independent tort doctrine as follows:  "It is settled

law in [South Dakota] that a breach of duty may arise from a contractual

relationship, and while matters complained of may have their origin in contract, the

gist of an action may be tortious."  Kunkel v. United Sec. Ins. Co. of N.J., 84 SD 116,

135, 168 NW2d 723, 733 (1969) (citing *Smith*, 70 SD at 236, 16 NW2d at 539).  The

independent tort doctrine has two functions:

> First, it maintains the symmetry of the general rule of not
> allowing punitive damages in contract actions, because the
> punitive damages are awarded for the tort, not the contract.
> Secondly, the independent tort requirement facilitates judicial
> review of the evidence by limiting the scope of review to a search
> for the elements of the tort.

*Grynberg*, 1997 SD 121, ¶19, 573 NW2d at 500 (emphasis removed) (quoting Vernon

Fire & Cas. Ins. Co. v. Sharp, 264 Ind 599, 349 NE2d 173 (1976)).

[¶8.]        In *Grynberg*, we found that the independent tort of deceit was properly

submitted to the jury because a legal duty existed beyond the contract obligation.

*Id* ¶22.  In that case, the contract was between the plaintiffs who owned the oil

field and the defendant who managed the exploration and production of oil and

accounted for the profits and expenses on behalf of the owners. *Id.* Not only did the plaintiffs in *Grynberg* not receive the benefits due to them under the contract, they were also defrauded by false representations. The false representations and fraudulent accounting practices caused the owners to agree to continue to have the defendant manage the oil fields and caused the owners to pay excessive costs. *Id.* ¶6. Thus, the tortious conduct involved more than the elements, i.e. terms of the contract, and were based, in part, on the nature of the on-going relationship between the parties.

[¶9.]     *Grynberg* is similar to the earlier case of *Smith*. *Smith* involved independent tortious conduct arising out of a landlord-tenant relationship created by contract. 70 SD at 235, 16 NW2d at 538. In *Smith*, the tenant alleged that the landlord had entered into a tortious course of conduct to remove the tenant from the premises, and as a result, damaged the tenant's property and rendered the apartment uninhabitable. *Id.* Recognizing that a "legal duty . . . may spring from extraneous circumstances, not constituting elements of the contract," we approved submitting the tort claims to a jury. Even though the conduct was "connected with and dependent upon" the contract, the landlord had a wider duty of not "invading" the renter's "rights of property and person" by "force or fraud." *Grynberg*, 1997 SD 121, ¶21, 573 NW2d at 501.

[¶10.]     Two other cases decided by this Court reached a contrary result - *Sundt Corp. v. State ex rel. S.D. Dep't of Transp.*, 1997 SD 91, 566 NW2d 476, and *Fisher Sand & Gravel Co. v. State ex rel. S.D. Dep't of Transp.*, 1997 SD 8, 558 NW2d 864. In both cases, the facts did not support an independent tort being

submitted to a jury. In *Sundt Corp.*, the Department of Transportation (DOT) awarded Sundt Corporation a single highway paving contract. 1997 SD 91, ¶2, 566 NW2d at 477. Sundt Corporation was to perform under this single contract with the DOT and provide gravel and surface reinforcement for 20 miles of road. *Id.* A dispute arose over whether the State had been negligent in maintaining the shoulders of the highway to be repaired, thereby increasing the time and expense to Sundt Corporation in performing under the contract. *Id.* We held the State would prevail on the negligence claim because "no legal duty [] existed outside the contract." *Id.* ¶10.

[¶11.]     Similarly, in *Fisher Sand & Gravel Co.*, we determined that the highway construction contract between Fisher Sand & Gravel Co. and the DOT was the only basis for a relationship between the parties. 1997 SD 8, ¶13, 558 NW2d at 867. Consequently, we declared that "rights are not to be determined by playing a game of labels" and that a contract "cannot be converted into a tort merely by attaching to the contract, or to the breach, new labels that sound in tort." *Id.* ¶19. Neither *Fisher Sand & Gravel Co.* nor *Sundt Corp.* involved the type of relationship that gave rise to the heightened duty not to invade another's property by force or fraud present in *Grynberg* and *Smith*.

***Schipporeits' Claims for Conversion and Fraudulent Misrepresentation***

[¶12.]     The basis of Schipporeits' conversion claim was that Khan had converted room reservations, equipment, supplies, and other personal property that were supposed to have been transferred as part of the sale of the Quality Inn. Schipporeits claimed Khan had transferred the reservations, other items, and

property to the Comfort Suites, the nearby competing facility owed by Khan. The basis of Schipporeits' fraudulent misrepresentation claim was that Khan had represented as part of the contract and/or negotiations that the room reservations, equipment, supplies, and other personal property of Quality Inn would be transferred to Schipporeits at closing. Schipporeits claimed they relied on these representations and that Khan knew the representations were false and made them with reckless disregard for the truth.

[¶13.]    For purposes of our analysis, we consider as true the evidence as presented by Schipporeits. The evidence showed that Kawasaki Motors had reserved a block of rooms at the Quality Inn for ten days during the Sturgis Motorcycle Rally. Shortly before the sale of the Quality Inn was to occur, Khan transferred the reservations to the Comfort Suites. Schipporeits' evidence also showed Khan: did not provide sufficient sheets and towels to stock the rooms of the hotel; removed items from the hotel, including a television from the breakfast room and the computer for guest use; and, did not leave sufficient supplies to operate the Quality Inn.

[¶14.]    In order for Schipporeits to prevail on their claim that Khan's conduct constituted independent torts, they must be able to show Khan had a legal duty apart from the terms of the contract. One of the terms of the contract provided that the sale would include "all goods[,] equipment, supplies, . . . other personal properties . . . , [and] room reservations." The contract terms provided as follows:

> This offer of sale includes all the real estates together with all easements and rights of way, all improvements thereon and all fixtures thereon, all goods[,] equipment, supplies, furniture, furnishings, machinery, appliances and other personal

> properties, the goodwill, business or trade name, services and trademarks, logos, room reservations and other intangible personal property on the premises of the Property.

The contract also required Khan to leave "a reasonable inventory of room supplies, laundry supplies, and breakfast supplies." The contract provision was as follows:

> Seller and Purchaser shall conduct a physical inventory of all furniture, fixtures and equipment located on and used in connection with the business operated on the Property. The entire inventory of Seller used and housed in the business is to be included in this sale. Seller is selling these physical inventories in "As is" condition. Seller will leave Purchaser a reasonable inventory of room supplies, laundry supplies, and breakfast supplies.

The language of the contract expressly required Khan, as part of the sale, to deliver the room reservations, a reasonable inventory of supplies, equipment, and personal property.

[¶15.] Because Khan's obligation to deliver these items at closing was specifically included in the terms of the contract, Schipporeits have not shown that Khan's breach was extraneous to the contract. Nor have Schipporeits shown that the relationship between Khan and the Schipporeits resulted in a heightened duty owed by Khan. Merely singling out terms of the contract by attaching labels to them that sound in tort does not convert Schipporeits' breach of contract claim into independent torts or punitive damages. The only basis for the parties' relationship was the one-time contract for the sale of the facility. The terms of the contract detailed the duties of the parties. Khan's conduct constituted a breach of the terms of the contract. However, instead of including the terms of the contract in their breach of contract claim, Schipporeits singled out certain terms, attempting to label them as independent torts. Without establishing an independent legal duty,

Schipporeits' tort claims cannot survive. *See Fisher Sand & Gravel Co.*, 1997 SD 8, ¶7, 558 NW2d at 869. Schipporeits' remedy was in contract, not tort. The trial court erred in submitting the tort claims to the jury. As a result, Schipporeits are not entitled to compensatory or punitive damages awarded for the tort claims.

[¶16.]     We reverse.

[¶17.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.